**In the Interest of: J.S., a Minor,**

**Appeal of Allegheny County Office of Children Youth and Families, Appellant (at 1766).**

**In re J.S., a Minor,**

**Appeal of M.D., Natural Mother, Appellant (at 1767).**

Superior Court of Pennsylvania.

Submitted April 23, 2009.
Filed July 21, 2009.

---

Michael H. Wojcik, Pittsburgh, for Allegheny County, appellant (at 1766).

Sharon M. Biasca, Pittsburgh, for Allegheny County Juvenile (at 1766) and M.D. appellant at (1767).

Judith E. Patterson, Pittsburgh, for J.S., appellee.

Linell A. Lee, Sewickley, for C.S., Participating Party.

Carol S. Mills-McCarthy, Pittsburgh, for J.C. and K.C., Participating Party.

Margo R. Epstein, Pittsburgh, for Allegheny County Office of Children Youth and Families, Participating Party.

BEFORE: BOWES, DONOHUE and POPOVICH, JJ.

OPINION BY BOWES, J.:

¶ 1 In this consolidated appeal, the Allegheny County Office of Children and Youth and Families ("CYF") and M.D. ("Mother") appeal from the order entered on September 18, 2008, wherein the juvenile court granted K.C. and J.C. ("Foster Parents") permission to intervene in an ongoing dependency proceeding. We reverse.

¶ 2 The facts and procedural history are not in dispute. CYF became involved with J.S. on the day he was born, September 16, 2005, after he and Mother tested positive for cocaine. The child's father, C.S. ("Father"), subsequently admitted that he also used cocaine two or three times per week. Mother and Father (collectively referred to as "Parents") never married, and they maintain separate residences.[1] J.S. was placed temporarily with Foster Parents, his paternal aunt and uncle. On September 21, 2005, the juvenile court entered a shelter order directing that J.S. remain in Foster Parents' care. J.S. never returned to either parent's custody. Thereafter, on October 19, 2005, the juvenile court adjudicated J.S. dependent pursuant to section 6302(1) of the Juvenile Act, 42 Pa.C.S. § 6302(1). Parents' objectives under the Family Service Plan ("FSP") included completing: 1) drug and alcohol treatment; 2) mental health treatment; 3) a parenting program, and 4) obtaining suitable housing. Parents also were required to submit random drug screens and attend weekly supervised visitation with J.S. The initial placement goal was reunification; however, after Parents achieved only minimal compliance with the FSP objectives, the goal was changed to adoption on October 19, 2006.

¶ 3 After CYF filed an unsuccessful petition to involuntarily terminate parental rights and this Court affirmed the orphans' court's order denying relief, the juvenile court ordered updated interactional evaluations between J.S. and Parents and an interactional evaluation between J.S. and Foster Parents. The juvenile court also ordered visitation to occur at Mother's home. The placement goal remained adoption.

¶ 4 On July 18, 2008, Mother filed a motion to compel CYF to comply with the

---

1. While Father participated in the dependency proceedings and challenged Foster Parents' motion to intervene, he did not appeal the juvenile court's September 18, 2008 order.

juvenile court's order directing that visitation occur in Mother's home, and she requested unsupervised visitation. On July 25, 2008, the juvenile court granted Mother's motion to compel, but it denied her request for unsupervised visitation. Thereafter, on August 22, 2008, the juvenile court entered a permanency review order, wherein it changed J.S.'s permanency goal from adoption to subsidized permanent legal custodianship ("SPLC") pursuant to 42 Pa.C.S. § 6351(a)(2.1) and (f.1)(3).[2] In preparation for SPLC and to address concerns raised during the prior interactional evaluation, the juvenile court also directed the foster mother to undergo an individual mental health evaluation with Allegheny Forensic Associates. Neither Parents nor CYF appealed from the August 22, 2008 order changing J.S.'s placement goal to SPLC.

¶ 5 During the August 22, 2008 permanency hearing, Foster Parents presented a petition to intervene in the dependency proceedings pursuant to Pa.R.J.C.P. 1133 and Pa.R.C.P. 2328. The petition also requested permission to access the juvenile court's record. Mother, Father, and CYF objected to Foster Parents' intervention. The juvenile court took the matter under advisement, and on September 18, 2008, it granted Foster Parents' petition to intervene and permitted access to the juvenile court record. Mother filed a timely notice of appeal on October 9, 2008. CYF filed notice of its appeal on October 20, 2008. The juvenile court entered orders on October 15 and 23, 2008, directing Mother and CYF, respectively, to file concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Mother complied on October 30, 2008. CYF com-

plied on November 3, 2008. This Court consolidated the appeals *sua sponte.*

¶ 6 Mother and CYF both allege the juvenile court erred in granting Foster Parents permission to intervene in the dependency proceedings. Neither Foster Parents nor the guardian *ad litem* filed a brief with this Court. The juvenile court did not address the merits of the arguments in its Rule 1925(a) opinion. Instead, it concluded that the September 18, 2008 order was interlocutory, and therefore, both appeals should be quashed. *See* Trial Court Opinion, 11/10/08, at 1.

¶ 7 Since the propriety of the juvenile court's order granting Foster Parents' motion to intervene involves a question of law, our standard of review is *de novo. In re L.C., II,* 900 A.2d 378, 380–81 (Pa.Super.2006) (issue regarding standing to participate in dependency proceeding is a question of law warranting plenary review). However, before we address the merits of the underlying issue, we first must determine whether the appeal is properly before this Court.

¶ 8 "Ordinarily, an order permitting intervention is interlocutory and not appealable." *In re Manley,* 305 Pa.Super. 332, 451 A.2d 557, 559 n. 5 (1982). However, in the case at bar, Mother and CYF both assert that the order is appealable pursuant to the collateral order doctrine, which our Supreme Court codified into Pa.R.A.P. 313. Rule 313 provides as follows:

(a) **General rule.** An appeal may be taken as of right from a collateral order of an administrative agency or lower court.

---

**2.** This Court previously explained, "SPLC transfers permanent legal custody to the dependant child's legal custodian without requiring the termination of natural parental rights. When deemed appropriate, the trial court has the power to permit continued visitation by the dependant child's natural parents." *In re B.S.,* 861 A.2d 974, 977 (Pa.Super.2004).

**(b) Definition.** A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

This Court previously explained the collateral order doctrine as follows:

The "collateral order doctrine" exists as an exception to the finality rule and permits immediate appeal as of right from an otherwise interlocutory order where an appellant demonstrates that the order appealed from meets the following elements: (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost. *See* Pa.R.A.P. 313; *see also Witt v. LaLonde,* 762 A.2d 1109, 1110 (Pa.Super.2000) (citations omitted).

*In re J.S.C.,* 851 A.2d 189, 191 (Pa.Super.2004). Our Supreme Court has directed that Rule 313 be interpreted narrowly so as not to swallow the general rule that only final orders are appealable as of right. *Geniviva v. Frisk,* 555 Pa. 589, 598–599, 725 A.2d 1209, 1214 (1999). To invoke the collateral order doctrine, each of the three prongs identified in the rule's definition must be clearly satisfied. *J.S. v. Whetzel,* 860 A.2d 1112, 1117 (Pa.Super.2004).

 ¶ 9 The order at issue in this appeal satisfies Rule 313. First, the issue of Foster Parents' standing to intervene in the dependency proceedings is separable from the central issue during the current stage of the dependency proceedings, facilitating permanency. Under the Juvenile Act, standing is a distinctly legal question that does not address the merits of the adjudication or the propriety of the permanency goal. Indeed, the determination of Foster Parents' standing in the case at bar is peripheral to the substantive decisions affecting the child's best interests, which is the polestar of all dependency proceedings. Accordingly, we conclude the September 18, 2008 order granting Foster Parents' petition to intervene satisfies the first prong of Rule 313.

¶ 10 Next, we observe that Foster Parents' putative right to intervene in the ongoing dependency proceedings is too important to be denied review. In fact, as discussed more fully below, the issue of standing is so significant in dependency proceedings that Pennsylvania jurisprudence has developed case law specifically outlining the narrow class of participants that are entitled to standing in dependency proceedings. *See In re L.C., II, supra* (collecting cases). Further, the legislature identified the limited rights foster parents, pre-adoptive parents, and relatives providing care possess during dependency proceedings. *Id.* at 381–82; 42 Pa.C.S. § 6336.1 (unless awarded legal custody, foster parents, pre-adoptive parents, or relatives providing care are entitled only to notice of hearing and right to be heard regarding child's adjustment, progress, and condition). Hence, we believe that the authentication or invalidation of Foster Parents' putative right to participate fully in J.S.'s dependency hearings is too important to deny review.

¶ 11 Finally, mindful of Mother's and CYF's assertion that Foster Parents lack standing and therefore are not entitled to participate in the ongoing dependency proceedings, we observe that their requested remedy would be irreparably lost if review of this issue was postponed until final judgment. Assuming the validity of Appellants' positions, if we do not address their arguments at this juncture, Foster

Parents would continue to exercise rights that they are not entitled to exercise until final disposition, at which point the remedy Mother and CYF is seeking will have been lost. Thus, we conclude the order satisfies the third prong of Rule 313. Having determined that all three prongs of the collateral order doctrine apply to the instant appeal, we will address these appeals on their merits. *Cf. In re B.S.*, 923 A.2d 517 (Pa.Super.2007) (assuming appellate jurisdiction without addressing collateral order doctrine to review order denying standing during dependency proceeding), and *In re L.C., II, supra* (same).

¶ 12 Upon our review of the statutory scheme outlining Foster Parents' rights in the context of dependency proceedings and the case law limiting standing in dependency proceedings to a narrow class of participants, we hold that the juvenile court erred in granting Foster Parents' petition to intervene under the facts of this case.

¶ 13 The grounds for standing in dependency proceedings are narrow.[3] "Only a 'party' has the right to participate, to be heard on his or her own behalf, to introduce evidence, and/or to cross-examine witnesses." *Id.* at 381. In *L.C., II,* this Court identified the only three classes of individuals that are conferred standing to participate, introduce evidence, be heard on their own behalf, and cross-examine witnesses during a dependency hearing: "(1) the parents of the juvenile whose dependency status is at issue; (2) the legal custodian of the juvenile whose dependency status is at issue, or (3) the person

whose care and control of the juvenile is in question." We further explained, "These categories logically stem from the fact ... the court has the authority to remove a [dependent] child from the custody of his or her parents or legal custodian, [and] [d]ue process requires that the child's legal caregiver ... be able to participate and present argument in the dependency proceedings." *Id.* at 381.

¶ 14 Herein, Foster Parents do not fall within any of the foregoing definitions of a "party." They are not J.S.'s parents. They are not the child's legal custodian. It is beyond argument that CYF has maintained legal custody of J.S. since the adjudication of dependency on October 20, 2005. Finally, Foster Parents are not the people whose care and control is in question; herein, it is Mother and Father whose care is being challenged. Accordingly, Foster Parents do not have standing in the underlying dependency proceeding. *See In re L.C., II, supra; See also In re F.B.*, 927 A.2d 268, 273 (Pa.Super.2007) ("Since appellees do not fit in any of these three categories, they did not have standing.... [T]hey are not entitled to ... participate, to be heard on his or her own behalf, to introduce evidence, and/or to cross-examine witnesses.").

¶ 15 Moreover, in setting forth a foster parent's rights to timely notice of the hearings and to be heard during the hearings, the Juvenile Act specifically notes that absent legal custody, a foster parent does not have standing to participate in the proceedings. *See* 42 Pa.C.S. § 6336.1.[4] As Foster Parents do not have

---

3. As CYF accurately observes, Foster Parents did not stand in *loco parentis* because their status as foster parents was subordinate to CYF, who maintained legal custody and was primarily responsible for the child's care and custody. *In re N.S.*, 845 A.2d 884, 887 (Pa.Super.2004); *In re Adoption of Crystal*

D.R., 331 Pa.Super. 501, 480 A.2d 1146, 1151–52 (1984).

4. When the juvenile court entered the order granting Foster Parents' petition to intervene, section 6336.1 provided as follows:

§ 6336.1. **Notice and hearing**

legal custody, they do not have standing to participate in the proceedings, introduce evidence, or cross-examine witnesses in J.S.'s ongoing dependency proceedings. Accordingly, we conclude the juvenile court erred in granting Foster Parents' motion to intervene and in permitting them to review the restricted juvenile court record.

■ ¶ 16 However, mindful of the recent change of J.S.'s permanency goal from adoption to SPLC with Foster Parents, we are compelled to explain why the prospective change in Foster Parents' legal status does not alter our decision. First, the order changing J.S.'s permanency goal did not confer any legal rights upon Foster Parents. In fact, until the juvenile court enters an order pursuant to Pa.R.J.C.P. 1515(B) and Pa.R.J.C.P. 1609, regarding the transfer of legal custody, and closes the dependency proceedings pursuant to Pa.R.J.C.P. 1613, regarding termination of court supervision, Foster Parents' legal status remains unchanged.

¶ 17 Further, although all of the parties agree that SPLC with visitation rights is an appropriate, if not the preferred, disposition, Foster Parents' prospective status as a permanent legal custodian is not certain. Indeed, the parties contemplated a six-month period to determine whether SPLC with Foster Parents is in J.S.'s best interest. In addition to the qualification study outlined in section 6351(a)(2.1) of the Juvenile Act, Foster Parents also must

address underlying issues regarding their interference with J.S.'s ability to fashion a healthy relationship with Parents. Foster Parents and Parents are presently engaged in mediation to confront some of these issues as they currently relate to Parents' visitation, and the August 2008 permanency order directed the foster mother to undergo a mental health evaluation and complete any recommended counseling sessions required to control her feelings toward Parents.

¶ 18 Foster Parents' attitude toward Mother and Father is a significant issue in this case, and the recommendation for granting Foster Parents permanent legal custody is dependent upon their ability to rectify their behavior. During the permanency hearing, Neil D. Rosenblum, Ph.D., a licensed psychologist CYF retained to evaluate J.S.'s relationship with Parents and Foster Parents, respectively, testified that he performed several interactional assessments and individual evaluations over the course of the dependency proceedings. N.T., 8/22/08, at 65–66. Dr. Rosenblum indicated that while he believes that J.S.'s primary attachment is with Foster Parents, whom he deemed the child's psychological parents, and SPLC would best serve J.S.'s permanency needs, he was concerned that Foster Parents would continue to impede J.S.'s ability to develop a healthy relationship with the birth parents. *Id.* at 67–68, 70, 75–76, 108.

---

The court shall direct the county agency or juvenile probation department to provide the child's foster parent, pre-adoptive parent or relative providing care for the child with timely notice of the hearing. The court shall provide the child's foster parent, pre-adoptive parent or relative providing care for the child the right to be heard at any hearing under this chapter. Unless a foster parent, pre-adoptive parent or relative providing care for a child has been awarded legal custody pursuant to section

6357 (relating to rights and duties of legal custodian), nothing in this section shall give the foster parent, pre-adoptive parent or relative providing care for the child legal standing in the matter being heard by the court.
42 Pa.C.S. § 6336.1. Subsequent amendments to this section, effective December 8, 2008, *inter alia* extended the right to be heard to submitting "a report in regard to the child's adjustment, progress and condition." *See* 42 Pa.C.S. § 6336.1(b)(1).

¶ 19 Dr. Rosenblum characterized Foster Parents as overprotective of J.S. and uncooperative with Parents' attempt to fashion a relationship with their son. *Id.* at 70. He opined that Foster Parents' insecurity may be one of several factors leading them to engage in counterproductive behavior. *Id.* at 71–72. Dr. Rosenblum also identified Foster Parents' anger with Mother and Father as a contributing factor in their behavior. *Id.* at 72. He noted that their distrust of Parents makes them overbearing during the child's visitation with Parents. *Id.* at 77–78. Dr. Rosenblum further opined that Foster Parents did not make a good faith effort to address these issues with Mother and Father, whom he believes are more accommodating. *Id.* at 72, 75.

¶ 20 Dr. Rosenblum explained Foster Parents' hypercritical perspective as follows:

> There is this attitude on their part that they're looking to find fault, I'm quite convinced of that. They're not willing to give [Parents] a chance and they don't want to recognize that [Mother] is taking care of [her daughter] day in and day out and she's doing a good job. I mean she's a conscientious mother. I think they're prejudging the birth parents. They're not willing to trust them or give them a chance to proceed in a manner that I believe would be beneficial for [J.S.]

*Id.* at 79.

¶ 21 In sum, Dr. Rosenblum found that Foster Parents have become increasingly entrenched, critical, and controlling. *Id.* at 99. He concluded that the juvenile court and CYF should retain oversight while Foster Parents learn to help J.S. cultivate a meaningful relationship with Parents. *Id.* at 85–86. Dr. Rosenblum testified, "I am clearly saying that in my opinion, before the [c]ourt would finalize a

goal of SPLC, I would like to see some demonstration that the increased visitation ... can be carried out in good faith ... along with mediation...." Accordingly, he recommended that the juvenile court delay finalizing permanency until Foster Parents have addressed these issues. *Id.* at 100.

¶ 22 In light of these significant facts, it is not appropriate to assume the juvenile court's prospective grant of permanent legal custody to Foster Parents is a mere formality. Hence, mindful of the narrow class of persons entitled to participate in dependency proceedings, we do not find the August 22, 2008 order changing J.S.'s permanency goal to SPLC to be a sufficient foundation to confer standing upon Foster Parents in the dependency proceedings.

¶ 23 Accordingly, we vacate the juvenile court's order granting Foster Parents' petition to intervene in the dependency proceedings and granting access to the juvenile court record.

¶ 24 Order reversed. Jurisdiction relinquished.