**In the Interest of S.H.J., Child.**

**Appeal of C.H.**

**In the Interest of A.J., Child.**

**Appeal of C.H.**

Superior Court of Pennsylvania.

Argued Aug. 20, 2013.
Filed Oct. 21, 2013.

Samuel C. Stretton, West Chester, for appellant.

Mark W. Tanner, Philadelphia, for appellees.

Michael E. Angelotti, Philadelphia, for Dept. of Human Services, participating party.

BEFORE: SHOGAN, WECHT, and COLVILLE *, JJ.

OPINION BY WECHT, J.:

In these consolidated appeals[1], C.H. ("Maternal Aunt"), the maternal aunt of S.H.J. and A.J. (collectively "the Children"), appeals the order entered on September 25, 2012. That order denied Maternal Aunt's petition to intervene in the Children's dependency proceedings after the trial court found that she lacked standing. We affirm.

A.J. (born in October 2009) first came to the attention of Philadelphia's Department of Human Services ("DHS") when DHS received a General Protective Services report on November 29, 2009. The report alleged that A.J.'s mother, S.H. ("Mother"), was overwhelmed by the burden of caring for him. The report also noted that Mother had evicted A.J.'s father, G.D.J. ("Father"), from the home because he failed to provide support for A.J. According to the report, Mother had three other children who were not in her care. Both Mother and Father were uncooperative with DHS during its investigation, refusing to provide their real names or information regarding A.J. and her siblings. DHS

---

* Retired Senior Judge assigned to the Superior Court.

1. We consolidated these appeals, *sua sponte,* on December 3, 2012.

placed A.J. in foster care after it obtained an order for protective custody on November 29, 2009.

Mother gave birth to S.H.J. prematurely in October 2010. Mother and Father agreed to accept In–Home Protective Services ("IHPS") from DHS, an intervention recommended after caseworkers visited Mother at the hospital. When DHS conducted a home visit with Mother at her mother's residence on February 18, 2011, Mother told the caseworker that S.H.J. was not there and that Father was caring for her. Mother and Father refused to make S.H.J. available for a DHS safety assessment and were otherwise uncooperative with DHS and IHPS. As a result, DHS filed a dependency petition. The trial court adjudicated S.H.J. dependent and committed her to DHS on March 31, 2011. On July 18, 2011, the trial court granted DHS' petitions for involuntary termination of parental rights as to both Mother and Father.

Maternal Aunt, appellant here, served as the kinship foster parent for the Children from July 2011 to April 2012. In April 2012, DHS removed the Children from Maternal Aunt's care. On April 9, 2012, the trial court ordered that the Children were not to be returned to Maternal Aunt's home. The record before us is unclear as to why the removal occurred.

On August 24, 2012, Maternal Aunt filed a petition to intervene in the ongoing dependency proceedings. At a permanency review hearing for the Children held on September 25, 2012, the trial court denied that petition. On October 24, 2012, Maternal Aunt filed her notice of appeal and concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2).

Maternal Aunt presents the following question for our review:

1. Did [the trial court] err in not granting standing to [Maternal Aunt] and denying her Petition to Intervene in the dependency/adoption proceedings in that [Maternal Aunt] was the maternal aunt, had custody previously for a substantial period of time of the [Children] as a kinship foster parent, stands *in loco parentis* to the [C]hildren, was classified as pre-adoptive to the [C]hildren, D.H.S. supported her position and it was in the best interest of the [C]hildren to allow [Maternal Aunt] to have standing and to intervene? Did [the trial court] err in stating and finding that issues of pre-adoption status were waived?

Maternal Aunt's Brief at 4.

■ An issue regarding standing to participate in dependency proceedings is a question of law. We apply a plenary scope of review, and our standard of review is *de novo. In re G.D.,* 61 A.3d 1031, 1036 (Pa.Super.2013) (citations omitted).

We begin our analysis by noting that, in her brief, Maternal Aunt refers incorrectly to the underlying action as "the dependency/adoption proceedings of these two [C]hildren." Maternal Aunt's Brief at 10.[2] A review of the record reveals that no petition for adoption has been filed in this case and that the proceedings in the juvenile court were pursuant to the Juvenile Act, 42 Pa.C.S.A. §§ 6301 *et seq.,* not the Adoption Act, 23 Pa.C.S.A. § § 2101 *et seq.*

■ Party status in dependency proceedings is limited to only three classes of persons: "(1) the parents of the juvenile

2. Maternal Aunt continues to refer to the proceeding as one of "dependency/adoption" throughout her brief.

whose dependency is at issue; (2) the legal custodian of the juvenile whose dependency is at issue; or[;] (3) the person whose care and control of the juvenile is in question." *In the Interest of L.C., II,* 900 A.2d 378, 381 (Pa.Super.2006). In *L.C., II,* the subject child had lived with his grandmother for the first fourteen years of his life until the trial court awarded legal and physical custody to his mother when he was fifteen. *Id.* at 379. The trial court adjudicated the child dependent a year later and placed him in the custody of the county children and youth agency. The trial court denied the grandmother's petition to participate in the dependency hearing, reasoning that the grandmother did not have legal custody or *in loco parentis* status at the time of the dependency, and that the grandmother's care, custody, and control were not at issue in the dependency proceeding. *Id,* at 380. The grandmother appealed. We affirmed the trial court. *Id,* at 383. We explained: "These categories logically stem from the fact that upon an adjudication of dependency, the court has the authority to remove a child from the custody of his or her parents or legal custodian. Due process requires that the child's *legal caregiver,* be it a parent or other custodian, be granted party status[.]" *Id.,* at 381 (citation omitted) (emphasis added).

■ We have held consistently that foster parents and persons acting *in loco parentis* lack standing to intervene in dependency. In *In re F.B.,* 927 A.2d 268, 273 (Pa.Super.2007), we reversed a trial court's order granting a petition to intervene from a child's grandparents upon finding that the trial court had erred in affording them standing based upon their *in loco parentis* status. "[W]hether [the grandparents] stood *in loco parentis* to the subject child was irrelevant to the court's granting of [the grandparents'] petition to intervene in the dependency proceeding and as to its determination of dependen-

cy." *Id,* at at 274. Thus, even assuming, *arguendo,* that Maternal Aunt stood *in loco parentis* to the Children, she would still be required to fall within one of the three enumerated categories to enjoy standing in dependency.

■ In *In re D.K.,* 922 A.2d 929 (Pa.Super.2007), we held that a person who happened to stand *in loco parentis* to a child had standing to participate in a dependency proceeding. Our decision, however, was based upon the additional facts: (1) that the appellant had been the children's primary caregiver for the period immediately preceding the dependency proceeding; and (2) that it was the appellant's care and control which was the subject of the dependency proceeding. *Id.* at 933. Accordingly, it was one or more of the enumerated categories that conferred standing, not the *in loco parentis* status. Like the grandmother in *L.C., II,* Maternal Aunt does not belong to any of the enumerated classes. She therefore lacks standing to intervene. This review of our decisional authority makes clear that an interested party must be within one of three enumerated categories to have standing in dependency. *In loco parentis* status, without more, does not create a fourth category.

Maternal Aunt asserts that she should have been granted standing based upon the facts of her case and the authority of prior decisions of this Court. Maternal Aunt first argues that "the evidence is fairly clear that [Maternal Aunt] was given responsibilities as the kinship foster parent for [the Children] in July of 2011 until April 3, 2012, the two minor [C]hildren resided with [Maternal Aunt] and bonded with her." Maternal Aunt's Brief at 12–13. However, these facts are irrelevant. Foster parents do not enjoy standing in dependency cases. *See In re J.S.,* 980 A.2d 117, 122–23 (Pa.Super.2009). While

the Children may share a bond with Maternal Aunt, that is not a relevant factor in determining standing. Neither of these facts places Maternal Aunt in one of the three enumerated classes.

Maternal Aunt also claims that the Children's extended family and DHS wanted the Children to reside with her. Maternal Aunt's Brief at 14. These desires are not relevant to the question of standing here, because they do not support a conclusion that Maternal Aunt belongs to one of the classes set forth in *L.C., II.*

We do not find the legal authority cited by Maternal Aunt to be persuasive. Maternal Aunt argues that we should consider 23 Pa.C.S.A. § 5324(2), which affords standing to "a person who stands *in loco parentis* to the child." Maternal Aunt then discusses how *in loco parentis* status affected standing in our decision in *Kellogg v. Kellogg,* 435 Pa.Super. 581, 646 A.2d 1246 (1994). Maternal Aunt's Brief at 16. Section 5324(2) and *Kellogg* involve child custody, and not juvenile dependency. Thus, they are not relevant to the matter before us.

Maternal Aunt also addresses *In re Adoption of B.R.S.,* 11 A.3d 541 (Pa.Super.2011). Maternal Aunt's Brief at 17. *B.R.S.* concerned foster parents who argued that they had standing to file a petition to terminate parental rights because they stood *in loco parentis.* The trial court found that the foster parents did not have standing. We quashed their appeal. Like *Kellogg, B.R.S.* is irrelevant to our analysis. It does not concern dependency. Standing to file a termination of parental rights petition is governed by statute. *See* 23 Pa.C.S.A. § 2512(a). Maternal Aunt also cites *In re Griffin,* 456 Pa.Super. 440, 690 A.2d 1192 (1997). Maternal Aunt's Brief at 18. However, *Griffin* dealt with foster parents who appealed the decision to remove children from their care. The case did not concern intervention in a dependency matter. Again, this citation is irrelevant to our determination.

Maternal Aunt next asks us to consider *In re N.S.,* 845 A.2d 884 (Pa.Super.2004). *N.S.* also speaks to the issue of standing in the context of adoption and visitation, not dependency. It is, likewise, irrelevant.

Finally, Maternal Aunt raises the issue, "Did [the trial court] err in stating and finding that issues of pre-adoption status were waived?" Maternal Aunt's Brief at 4. Maternal Aunt argues that there is an exception recognized for foster parents who are also prospective adoptive parents. This exception grants standing to those foster parents because they have an expectation of permanency. *Id.* at 18.

The trial court found the issue waived because it was not raised before the trial court. *See* T.C.O. at 6. Maternal Aunt admits that this argument was not advanced during the hearing on her petition to intervene, but she claims that her prior counsel was to blame for this omission. Maternal Aunt asserts that her status was known by DHS and was part of the record before the juvenile court. Maternal Aunt's Brief at 18–21.

■ We agree that this issue was not presented to the trial court. Further, the facts do not support Maternal Aunt's claim that she was a prospective adoptive parent. Our review of the record confirms that an August 7, 2012 Family Service Plan indicated that "[Maternal Aunt] is working on the necessary paperwork . . . to adopt the [Children]."[3] Family Service Plan, 8/7/2012, at 9 (unpaginated). That same document stated that the Children were residing in a pre-adoptive foster

---

**3.** The record reflects that no petition to adopt has been filed. However, Maternal Aunt could file such a petition and pursue adoption of the Children.

home. *Id.* However, the Children were not residing with Maternal Aunt at that time. Thus, it was not Maternal Aunt's home that was the pre-adoptive home referenced in the plan. Nothing else in the record identifies Maternal Aunt as a prospective adoptive parent.[4] Based upon these circumstances, it was not error for the trial court to deny Maternal Aunt's petition to intervene.

Maternal Aunt does not fall within any of the three categories articulated in *L.C., II.* Accordingly, for the reasons stated, we affirm the order of the trial court that denied Maternal Aunt standing in the Children's dependency proceeding.

Order affirmed.

---

4. Maternal Aunt's petition to intervene asserts that she was rejected as an adoptive parent and that she wishes to adopt the Children. Petition, 8/24/2012, at ¶¶ 11, 12, 16. The petition does not assert that Maternal Aunt was a prospective adoptive parent.

