J-A18005-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: C.R., a Minor | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: M.J.R. | No. 188 MDA 2014 |

Appeal from the Order entered January 2, 2014,
in the Court of Common Pleas of Dauphin County, Criminal
Division, at No(s): CP-22-DP-0000146-2010

| IN THE INTEREST OF: D.R., a Minor | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: M.J.R. | No. 189 MDA 2014 |

Appeal from the Order entered January 2, 2014,
in the Court of Common Pleas of Dauphin County, Criminal
Division, at No(s): CP-22-DP-0000144-2010

BEFORE:    LAZARUS, WECHT and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED OCTOBER 31, 2014**

M.J.R. ("Foster Mother"), the former foster mother of the two subject minor, female children, C.R. (born in September 2006), and D.R. (born in February 2008) (collectively, "the Children"), appeals from the Orders entered on January 2, 2014, dismissing her Motions for a permanency review hearing to determine placement under section 6351 of the Juvenile

Act,[1] with regard to the Children, who were adjudicated dependent under section 6302 of the Juvenile Act.[2] The Dauphin County Social Services for Children & Youth ("DCSS for C & Y" or the "Agency") has filed a Motion to Quash the appeal, claiming that Foster Mother lacks standing. We agree, and quash the appeals for lack of standing.

We note the following relevant facts. On October 1, 2010, the Children were placed in the home of Foster Mother and M.R., her husband, as foster parents. The Children were adjudicated dependent on October 14, 2010, and their biological mother voluntarily relinquished her parental rights on April 5, 2012.

In July 2012, several indecent assault charges were brought against the Children's foster father, M.R. The trial court terminated the parental rights of the Children's biological parents on August 30, 2012. Thereafter, in November 2012, a safety plan with provisions for the Children was put into effect by Orders entered on November 2, 2012, signed by Dauphin County President Judge Todd A. Hoover. The November 2, 2012 Orders, denying the Agency's Motion for placement, each provided as follows:

> **ORDER – Based upon the above findings, IT IS ORDERED THAT:**
>
> Physical custody of the subject minor child shall remain at the foster home of [Foster Mother].

---

[1] 42 Pa.C.S.A. § 6351 *et seq*.

[2] 42 Pa.C.S.A. § 6302.

> Placement of the subject minor child shall not be modified and shall remain at the current foster home. The child's placement is the least restrictive placement that meets the needs of the child and there is no less restrictive alternative available.
>
> **IT IS FURTHER ORDERED THAT:**
>
> . . . the safety plan in place concerning the subject minor child must be adhered to. IF the safety plan is violated, the child shall be immediately removed from the foster home.
>
> Such disposition having been determined to be best suited to the protection and physical, mental and moral welfare of the child.

Orders (Modification of Child's Placement), 11/2/12.

Thus, under the November 2, 2012 Orders and the safety plan, the Children remained in Foster Mother's home, with supervisory measures implemented for M.R. Under the safety plan, (1) M.R. was not permitted to sleep in the home; (2) M.R. was not to have any unsupervised contact with the Children; and (3) M.R. was not to have any contact with the Children, in the home or otherwise, without a third person being present.

On June 13, 2013, M.R. entered a guilty plea. On June 20, 2013, the guardian *ad litem* for the Children, Joy Fleming, Esquire ("Attorney Fleming"), filed a Motion for Modification of the Children's placement, requesting their immediate removal from the home for their safety. On June 20, 2013, the Agency removed the Children, and placed them in the foster home of C.H. and B.H. On June 21, 2013, the Agency filed a Response to

the Motion for Modification of the Children's placement. On June 24, 2013, the trial court entered an Order directing the parties to appear for a conference on July 8, 2013. Foster Mother was not served with notice of either the Motion for Modification or the Response of the Agency, nor was she served with notice of the trial court's Order. Although the Children were removed from her home, Foster Mother did not seek to be heard on the removal, or to intervene in further dependency proceedings.

On September 24, 2013, M.R. was sentenced to serve two consecutive terms of twenty-four months of probation, and was placed on the Megan's Law Offender list for the next fifteen years. On September 24, 2013 and December 3, 2013, a Juvenile Court Master held permanency review hearings, and determined that the Children should continue in placement with their then current foster parents. By Orders entered on September 25, 2013, and December 4, 2013, The Honorable John F. Cherry adopted the Master's recommendations.

On December 18, 2013, Foster Mother filed Motions for permanency review hearings to determine the Children's placement. In her Motions, Foster Mother asserted that she does not pose a safety threat to the Children, and that they were improperly removed from her home on June 20, 2013, without notice or an opportunity for her to be heard on the necessity of removal. As such, Foster Mother claimed that the removal violated section 6336.1(a) of the Juvenile Act, 42 Pa.C.S.A. § 6336.1(a),

which requires that a foster parent be timely provided notice of hearings and an opportunity to be heard. Foster Mother also claimed that the removal violated Rules 1604 and 1606 of the Pennsylvania Rules of Judicial Court Procedure ("Pa.R.J.C.P."), regarding submission of a report concerning the foster child by a foster parent, and the modification of a dependent child's placement, respectively. According to Foster Mother, the actions subsequent to the removal of the Children from her home were presented to a Juvenile Master, as opposed to the trial court judge, Judge Hoover. She argued that the presentation to a Juvenile Master was in violation of an implicit direction in the trial court's November 2, 2012 Order, which provided that any removal action without a violation of the safety plan was to occur only before Judge Hoover, and not before a Master. *See* Motion, 12/18/13, at ¶¶ 38-39.

On January 2, 2014, the trial court, by Judge Cherry, entered an Order dismissing Foster Mother's Motion, ruling that she lacked standing to request a permanency review hearing on the Children's placement.

On January 29, 2014, Foster Mother filed two Notices of Appeal, along with Concise Statements of Errors Complained of on Appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). This Court, *sua sponte*, consolidated the appeals on February 27, 2014.

Foster Mother now presents the following claim for our review:

> Did the Dependency Court err when it dismissed [Foster Mother's] Motion for Permanency Review Hearing to Determine

Placement on grounds that [Foster Mother] lacked legal standing to make such request?

Foster Mother's Brief at 4.

Our Supreme Court has set forth our standard of review in dependency cases as follows:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). An issue regarding standing to participate in dependency proceedings is a question of law warranting plenary review, and our scope of review is *de novo*. *See In re S.H.J.*, 78 A.3d 1158, 1160 (Pa. Super. 2013); *In re J.S.*, 980 A.2d 117, 120 (Pa. Super. 2009). "[T]he question of standing is whether a litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Silfies v. Webster*, 713 A.2d 639, 642 (Pa. Super. 1998).

In determining that Foster Mother lacked standing to participate in the dependency proceedings, the trial court reasoned as follows:

> … C.R. and D.R. have been in the legal and physical custody of the Agency since October 14, 2010. Though the [C]hildren were placed in the pre-adoptive home of [M.R.] and [Foster Mother] on October 1, 2010, the [C]hildren were removed from that home on June 20, 2013 due to safety concerns. C.R. and D.R. were placed and continue to be placed in the pre-adoptive home of [C.H. and B.H.]. Similar to *In re S.H.J.*, it is not relevant that [Foster Mother] had previously been a foster parent to the [C]hildren when considering the issue of standing. [Foster Mother] is no longer a foster parent to

the [C]hildren. As it stands, [Foster Mother] is not an individual with standing as enumerated in the relevant statutory and case law. Additionally, [Foster Mother] does not have legal custody of the [C]hildren. For these reasons, [Foster Mother] does not possess standing in the matter.

Trial Court Opinion, 2/14/14, at 4.

Foster Mother contends that she had standing to file the Motions for permanency review hearings, relying on *In re C.M.S.*, 884 A.2d 1284 (Pa. Super. 2005), for the proposition that a prospective adoptive parent, who is *in loco parentis*, has standing to petition the court for custody or termination of parental rights, even when she does not have legal custody. Brief for Appellant at 8. Foster Mother acknowledges that the Agency retained legal custody of the Children. *Id.* at 9. She argues that, until the Children were removed from her home and placed in another home, she had standing to petition the court for legal custody by filing a petition for adoption pursuant to *C.M.S.* and *Silfies*. *Id.* Foster Mother urges that the removal of the Children from her home was improper because there was no emergency, and she was not afforded notice of the removal. *Id.* Foster Mother states that, while safety concerns were the reason for modifying the placement, the Children had been in Foster Mother's care, without incident. *Id.* Additionally, Foster Mother argues that, to permit the requirements of section 6336.1(a), regarding the participation of foster and pre-adoptive parents in dependency proceedings, to be wholly disregarded without recourse for her, would render the statute a nullity. *Id.* at 10.

Moreover, Foster Mother argues that Pa.R.J.C.P. 1606 required the trial court to hold a hearing on the modification of the Children's placement, which, she argues, was not an emergency because the Children had been in her care, under the safety plan, while M.R. was charged with his crimes. *Id.* at 9. Foster Mother asserts that she was deprived of her constitutional guarantee to due process of law because she was not provided with notice of the presentation of the modification Motion, so that she could object and be given an opportunity to be heard at a hearing. *Id.* at 10.

Section 6336.1 of the Juvenile Act addresses notice and hearings in juvenile matters and provides, in relevant part, as follows:

**§ 6336.1. Notice and hearing**

**(a) General rule.—**The court shall direct the county agency or juvenile probation department to provide the child's foster parent, preadoptive parent or relative providing care for the child with timely notice of the hearing. The court shall provide the child's foster parent, preadoptive parent or relative providing care for the child the right to be heard at any hearing under this chapter. **Unless a foster parent, preadoptive parent or relative providing care for a child has been awarded legal custody pursuant to section 6357 (relating to rights and duties of legal custodian), nothing in this section shall give the foster parent, preadoptive parent or relative providing care for the child legal standing in the matter being heard by the court.**

42 Pa.C.S.A. § 6336.1 (emphasis added).

Rule 1606 addresses the modification of dependent child placement and provides, in relevant part, as follows:

**Rule 1606. Modification of Dependent Child's Placement**

- 8 -

**A. County agency's duties.**

(1) *Emergencies.*

(a) Only in an emergency when a judge cannot be reached, a child may be placed temporarily in a shelter care facility or other appropriate care.

(b) The county agency immediately shall notify the court and all parties of any change made due to the emergency.

(c) The county agency shall file a motion or stipulation for modification of the dispositional order by the next business day of the child's placement in a shelter care facility or other appropriate care.

(2) *Non-emergent cases.* In all other cases, the county agency shall seek approval of the court for a change in the child's placement prior to the removal of the child from the placement by filing a motion or a stipulation of modification of the dispositional order.

**B. Contents of the motion.** The motion for modification of the dispositional order shall include:

(1) the specific reasons for the necessity of change to the order;

(2) the proposed placement;

(3) the current location of the child;

(4) the manner in which any educational, health care, and disability needs of the child will be addressed;

(5) an averment as to whether each party concurs or objects to the proposal, including the child's wishes if ascertainable; and

(6) the signatures of all the parties.

**C. Objections.** If a party objects to proposed modification of the dispositional order, the objections shall be filed no later than

three days after the filing of the motion for modification of the child's placement.

**D.    Court's duties.**  Once the county agency has requested approval from the court to modify a child's placement or after an emergency change in placement has already taken place, the court may:

(1)    schedule a prompt hearing to determine whether there will be a modification of the child's placement;

(2)    enter an appropriate order to modify the child's placement; or

(3)    enter an order denying the motion.

*Comment:*    This rule is intended to address changes in the child's placement.  Brief temporary removals for hospitalization, respite situations, visitations, or other matters when a child will be returned to the same placement are not covered under this rule.

Pursuant to paragraph (A)(1), if there must be a change in the placement of the child due to an emergent situation, the county agency may temporarily place a child in a shelter-care facility or other appropriate care pending the filing of a motion for modification of the dispositional order.  The county agency immediately is to notify the court and all parties of the change made and file a motion or stipulation by the next business day.

Pursuant to paragraph (A)(2), in all other cases, the court is to make a decision prior to the child being removed from the placement.  Stability for the child is critical.  Multiple placements can add to a child's trauma.  A child should not be shuffled from home to home out of convenience for a foster parent, relative, or other person caring for the child.

Pa.R.J.C.P. 1606.

First, we address whether Foster Mother has standing to participate in the present dependency proceedings, through the filing of her Motions for permanency review hearings regarding the placement of the Children, in

order to have them returned to her. Essentially, Foster Mother's Motion is a motion to intervene in the dependency proceedings.

This Court has explained that

[p]arty status in dependency proceedings is limited to only three classes of persons: "(1) the parents of the juvenile whose dependency is at issue; (2) the legal custodian of the juvenile whose dependency is at issue; or (3) the person whose care and control of the juvenile is in question." *In the Interest of L.C., II*, 900 A.2d 378, 381 (Pa. Super. 2006).

*In re S.H.J.*, 78 A.3d at 1160-61.

These categories logically stem from the fact that upon an adjudication of dependency, the court has the authority to remove a child from the custody of his or her parents or legal custodian. Due process requires that the child's legal caregiver, be it a parent or other custodian, be granted party status.

*Id.* at 1161 (citation, quotation marks, emphasis and some punctuation omitted). This Court has consistently held that foster parents and persons acting *in loco parentis* do not have standing to intervene in dependency cases. *Id.* at 1161 (citing, *inter alia*, *In re J.S.*, 980 A.2d 117, 122-23 (Pa. Super. 2009)).[3]

---

[3] In *In re J.S.*, a panel of this Court addressed an appeal, by the agency and the mother of the subject child, from the trial court's grant of permission for the child's foster parents to intervene in an ongoing dependency proceeding. The panel reversed, citing section 6336.1. The panel reasoned that the foster parents lacked legal custody and lacked standing both to participate in the proceedings and to review the juvenile court record. *Id*. at 122-23. Moreover, the panel noted that the foster parents could not stand *in loco parentis* to the child because their status as foster parents was subordinate to the agency, which maintained legal custody and was primarily responsible for the child's care and custody. *Id*. at 122 n.4.

- 11 -

In **In re C.M.S.**, cited by Foster Mother, this Court concluded that prospective adoptive parents have standing *in loco parentis* with regard to a child, and may *commence* a legal proceeding involving the child, either for custody or termination of parental rights. **In re C.M.S.**, 884 A.2d at 1288-89 (citing, *inter alia*, **Silfies**, 713 A.2d at 643-45).[4] Because the petitioners in **In re C.M.S.** stood *in loco parentis* to the child, this Court concluded that they had standing to file a termination petition.

We conclude that **In re C.M.S.** and **Silfies** are inapplicable in the instant case, as the present case is not a termination or custody matter, but a dependency case. As stated above, this Court has held that foster parents and persons acting *in loco parentis* do not have standing to intervene in dependency cases. **In re S.H.J.**, 78 A.3d at 1161-62. Further, the panel in **In re S.H.J.** expressly declined to apply case law addressing standing in custody, termination, and adoption matters, to cases involving dependency proceedings.

We, therefore, need not address Foster Mother's argument that she was deprived of her *in loco parentis* status, and her ability to petition for adoption or legal custody of the Children, based upon the failure of the guardian *ad litem* to adhere to the process set forth in Rule 1606. Foster

---

[4] **Silfies** involved an appeal from the dismissal of two successive child custody complaints filed by prospective adoptive parents who had assumed considerable parental duties with regard to the child at issue. The panel found that the prospective adoptive parents stood *in loco parentis* to the child, and had standing to bring the custody action.

Mother has not established standing under any of the three categories articulated in *L.C., II*. To the extent that Foster Mother contends that the removal process was improper in this matter, she does not have standing, as a party to the dependency proceedings, to bring that issue before the Court.

Citing *In re J.F.*, 27 A.3d 1017, 1025 (Pa. Super. 2011), Foster Mother also claims that, even without standing, the lack of notice and opportunity to be heard with regard to her is reversible error, absent a showing that these requirements were constructively met. Brief for Appellant at 10. Foster Mother urges that, in accordance with section 6336.1(a), she was entitled to notice and an opportunity to be heard prior to the dependency court's adjudication of the Petitions for modification of the Children's placement under Pa.R.J.C.P. 1006(A)(2). Brief for Appellant at 9.

In *In re J.F.*, this Court recognized that a foster mother, who lacked standing in a dependency matter, had the right to notice and an opportunity to be heard. *In re J.F.*, 27 A.3d at 1021 (relying on 42 Pa.C.S.A. § 6336.1(a)). In that case, this Court ruled that, although there was not strict adherence to the rules concerning notice to the foster parent under the Pennsylvania Rules of Judicial Procedure, the foster mother was made aware of the proceedings, and a meaningful hearing was conducted. *Id.* at 1023-24.

Unlike the foster mother in *In re J.F.*, there is nothing in the record to demonstrate that Foster Mother sought to be heard at the proceedings regarding the removal of the Children. The record reflects that Foster Mother knew about the removal of the Children when they were taken from her home on June 20, 2013. However, Foster Mother did not file a motion seeking to participate in the first hearing regarding the removal of the Children from her home, occurring on September 3, 2013. Nor did she attempt to participate in the second hearing, occurring on December 3, 2013. Foster Mother filed her Motions for a permanency review hearing, to determine placement of the Children, on December 18, 2013, approximately six months after the Children's removal from her home on June 20, 2013. Thus, Foster Mother's argument concerning the denial of due process in the removal process in this matter, based on *In re J.F.*, is misplaced. By her six-month delay, she obviously is seeking to advocate for herself as a foster parent deserving of the Children's placement with her, instead of seeking to act in the best interests of the Children.

As stated in the Comment to Rule 1606,

[s]tability for the child is critical. Multiple placements can add to a child's trauma. A child should not be shuffled from home to home out of convenience for a foster parent, relative, or other person caring for the child.

Pa.R.J.C.P. 1606, cmt. We conclude that Foster Mother's failure to file a motion in relation to the removal hearings, and instead seeking to become a

party to the dependency proceeding, where she lacks standing, is fatal to her present appeals.

As Foster Mother's appeal is from the denial of her Motions for a permanency review hearing regarding the placement of the Children, and, as she lacked standing to file such a Motions, we are constrained to quash Foster Mother's appeals for lack of standing.

Applications to Quash granted; appeals quashed; Superior Court jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/31/2014