J-A03035-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: | : | IN THE SUPERIOR COURT OF |
| S.K., A MINOR | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.W. | : | No. 1321 EDA 2024 |

Appeal from the Order Entered May 1, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001943-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: | : | IN THE SUPERIOR COURT OF |
| S.K., A MINOR | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.W. | : | No. 1322 EDA 2024 |

Appeal from the Order Entered May 1, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001946-2018

BEFORE:   STABILE, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED AUGUST 18, 2025**

In this dependency matter, T.W. ("Grandmother") appeals *pro se* from

the permanency review order, which removed her grandchildren — S.K.

("Sv.K."), born in April 2018, and S.K. ("Sr.K."), born in March 2019[1]

(collectively, "the Children") — from her foster care.  We conclude that T.W.

lacks standing to appeal and thus quash.

---

[1] For clarification, Sr.K.'s matter is docketed at trial docket CP-51-DP-0001943-2019 and Superior Court docket 1321 EDA 2024.  Sv.K.'s matter is at trial docket CP-51-DP-0001946-2018 and Superior Court docket 1322 EDA 2024.

The parents of the Children are I.P. ("Mother") and A.K. ("Father"). Grandmother is Mother's mother. The trial court adjudicated Sv.K. dependent in August 2018, when he was four months old. The trial court adjudicated Sr.K. dependent in February 2020, when she was ten months old. The Children initially remained in Mother's care while the court transferred legal custody of both children to the Philadelphia Department of Human Services ("DHS").

Since Sv.K. and Sr.K. were born, they have spent substantial time in Grandmother's care. *See* Trial Court Opinion, 8/29/24, at 3. In 2021, DHS placed the Children with Grandmother in kinship care, although she "was never granted legal custody of either child." *Id*.; *see also* DHS' Supplemental Letter Brief at 1 (unnumbered).

On November 30, 2023, the trial court changed both Children's goals to adoption, upon DHS' petitions. Mother's parental rights to the Children have been terminated.[2]

_____

[2] The trial dockets indicate that on the same day DHS filed the goal change petitions, it also filed praceipes to file petitions to terminate parental rights. The trial dockets further show that on September 20, 2023, DHS filed preacipes to file a petition to relinquish Mother's parental rights. Those filings, however, are not in the certified records for this dependency matter. *See In re Adoption of B.R.S.*, 11 A.3d 541, 545 n.3 (Pa. Super. 2011) (stating: permanency planning for dependent children proceeds in the juvenile court under the Juvenile Act, 42 Pa.C.S.A. §§ 6301-6387; while the termination of parental rights matters proceed in Orphans' Court under the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938; and the same trial judge may preside over both matters); *see also In re J.D.H.*, 171 A.3d 903, 906 (Pa. Super. 2017) *(Footnote Continued Next Page)*

At a permanency review hearing on May 1, 2024, DHS requested the Children be removed from Grandmother's care. *See* N.T., 5/1/24, at 7. Both Children have autism and require "extensive services." *Id*. at 11. DHS presented testimony that Grandmother was "very difficult" and "aggressive" with multiple service providers, such that she "interfered" with the Children's services, "went through four providers because of her behavior," and refused to sign Sv.K.'s "IEP" because she did not agree with the evaluation. *Id*. at 9-11, 15. The DHS case manager supervisor also testified that Grandmother has called "several times" "to have the [C]hildren removed," and once called "yelling and screaming" that she has "done all that she can" and DHS "need[ed] to come pick up the" Children. *Id*. at 10.

The Children's guardian *ad litem*, James Giles, Esquire ("Child Advocate"),[3] argued it was in the Children's best interests to remain in Grandmother's care.[4] He also called Grandmother as a witness. She denied DHS' allegations. *See id*. at 37-43.

On the same day, the trial court entered permanency review orders, which removed both Children from Grandmother's care. Grandmother filed

_____

(stating that "dependency proceedings do not end merely because a trial court enters a goal change order").

[3] Attorney Giles is identified in this Court's docket as the guardian *ad litem*. However, as the trial court referred to him as the "Child Advocate" throughout the hearing, we adopt that term for purposes of this memorandum.

[4] Child Advocate has not, however, filed a brief on appeal.

separate *pro se* notices of appeal at each docket, along with Pa.R.A.P. 1925(a)(2) concise statements of errors complained of on appeal. Pertinently, Grandmother has not filed any petition to intervene.

In its opinion, the trial court suggests that Grandmother lacks standing to appeal because she does not fall into any of the three classes of potential "parties" in a dependency matter: the parent of the child, the legal custodian of the child, or the person whose care and control of the child is in question. Trial Court Opinion, 8/29/24, at 3. DHS similarly argues that Grandmother lacks standing because she has failed to petition the court to intervene. **See** DHS' Brief at 10-11. After careful review, we determine Grandmother lacks standing because she has not sought to intervene.

As noted above, the Juvenile Act governs dependency proceedings. **See** **In re Adoption of B.R.S.**, 11 A.3d at 545 n.3. "An issue regarding standing to participate in dependency proceedings is a question of law warranting plenary review, and our scope of review is *de novo*." **Interest of C.R.**, 111 A.3d 179, 182 (Pa. Super. 2015).

This Court has stated:

In the context of a dependency proceeding, we have defined a **party** to include "(1) the parents of the juvenile whose dependency status is at issue; (2) the legal custodian of the juvenile whose dependency status is at issue; (3) the person whose care and control of the juvenile is in question." We explained that "[t]hese categories logically stem from the fact that upon an adjudication of dependency, the court has the authority to remove a child from the custody of his or her parents or legal custodian."

- 4 -

*Interest of M.M.*, 302 A.3d 189, 199-200 (Pa. Super. 2023) (citations omitted and emphasis added).

A potential party or intervenor's ability to intervene in a dependency matter is not automatic. Pennsylvania Rule of Juvenile Court Procedure 1133 provides:

> **A. Contents.** The motion to intervene [in a dependency matter] *shall include*:
>
> (1) the name and address of the person moving to intervene;
>
> (2) the relationship of the intervening person to the child;
>
> (3) the contact between the child and the intervening person;
>
> (4) the grounds on which intervention is sought; and
>
> (5) the request sought.
>
> **B. Action by court.** Upon the filing of a motion to intervene and after a hearing, *the court shall enter an order granting or denying the motion*.

Pa.R.J.C.P. 1133(A)-(B) (emphases added).

We further note that under Section 6336.1(a) of the Juvenile Act, a "child's foster parent, preadoptive parent, relative providing care for the child[, and] a potential kinship care resource" is entitled to timely notice of a hearing, as well as "the right to be heard at any hearing."[5] 42 Pa.C.S.A. § 6336.1(a). However, a non-party cannot make objections, introduce

_____

[5] A potential kinship care resource's "right to be heard during a scheduled hearing or at a separate dispositional hearing [is limited] to the individual's qualifications to provide kinship care." 42 Pa.C.S.A. § 6336.1(a).

evidence, or cross-examine witnesses. *See Interest of S.W.*, 312 A.3d at 359.

The same subsection, 6336.1(a), further provides:

Unless a foster parent, preadoptive parent, relative providing care or a kinship care resource for a child has been awarded legal custody pursuant to section 6357 (relating to rights and duties of legal custodian), *nothing in this section shall give the foster parent, preadoptive parent, relative providing care or a potential kinship care resource for the child legal standing in the matter being heard by the court*.

42 Pa.C.S.A. § 6336.1(a) (emphasis added).

The Pennsylvania Supreme Court recently addressed the emphasized portion of the statute in *Interest of S.W.*, 334 A.3d 334 (Pa. 2025). In that case, the trial court removed a child from the foster parents' home, upon petition by the county children and youth services agency. *See id*. at 336-37. The foster parents then filed a petition to intervene in the child's dependency matter. *See id*. at 337. The trial court denied the petition on the merits, and the foster parents appealed from this order. *See id*. at 337-38. On appeal, our Supreme Court determined the foster parents were not entitled to relief. It reasoned:

Section 6336.1(a) provides preadoptive parents with the right to notice of any hearing and a right to be heard at such hearings. Thus, the legislature ensured that the important information held by preadoptive parents would be presented the judge, but did so in a way that *did not grant preadoptive parents standing*. Preadoptive parent standing is contrary to the explicit structure and goals of the Juvenile Act.

*Id*. at 346 (emphasis added).[6]

Furthermore, we consider this Court's decision in *Interest of C.R.* There, the children and youth agency removed the children from the foster mother's home. *See Interest of C.R.*, 111 A.3d at 181. The foster mother did not initially seek to be heard on the removal or to intervene in the dependency proceedings. *See id*. Approximately six months thereafter, the foster mother filed motions for permanency review hearings to determine the children's placement and argued, *inter alia*, that as a prospective adoptive parent, she was *in loco parentis* and thus had standing. *See id*. The trial court dismissed the motions, finding that because the foster mother was not the current foster carer, she lacked standing to request a permanency review hearing. *See id*. at 182.

_____

[6] We note that salient to the *Interest of S.W.* holding was the Court's decision to overrule a 1989 Superior Court decision, *Mitch v. Bucks County Children & Youth Social Service Agency*, 556 A.2d 419 (Pa. Super. 1989), which predated the 1998 enactment of section 6336.1(a). The Court determined *Mitch* — which distinguished "prospective adoptive parents" from foster parents, and held that prospective adoptive parents could have standing to sue for custody — was in conflict with section 6336.1(a).

In any event, the facts in *Interest of S.W.* are distinguishable from those in this matter. As stated above, the foster parents in that case filed a petition to intervene in the child's dependency proceedings; and the trial court denied it on the merits. *See Interest of S.W.*, 334 A.3d at 337-38. It was this order from which the foster parents appealed and which the Supreme Court reviewed. *See id*. at 338. In contrast, as we discuss *infra*, in this case Grandmother did not seek to intervene at any point before the trial court.

On appeal, this Court construed the foster mother's motions for permanency review hearings to be motions to intervene. *See Interest of C.R.*, 111 A.3d at 184. This Court then concluded that she failed to establish standing under any of the three categories conferring party status — the child's parent, the child's legal custodian, or the person whose care and control of the child is in question. *See id*. at 185. This Court thus quashed the foster mother's appeal. *See id*. at 186.

While the factual and procedural postures in *Interest of C.R.* differ from those in this matter, we find guidance in that decision. In that case, the foster mother filed what this Court construed to be a motion to intervene, and the trial court denied relief following consideration of her standing arguments. *See Interest of C.R.*, 111 A.3d at 182. Indeed, our review of case authority has not revealed a dependency matter in which the trial court has *sua sponte* granted party status, in the absence of any motion to intervene. Instead, relevant decisions have involved a petition to intervene and, saliently, the trial court's ruling on it. *See, e.g. Interest of S.W.*, 334 A.3d at 337-38 (discussed *supra*); *Interest of M.R.F., III*, 182 A.3d 1050 (Pa. Super. 2017) (affirming trial court's denial of foster parents' motion to intervene after court denied agency's petition to terminate parents' parental rights); *Interest of C.R.*, 111 A.3d at 181 (construing foster mother's motions for permanency review hearings to be motions to intervene and affirming denial of them); *In re S.H.J.*, 78 A.3d 1158, 1163 (Pa. Super. 2013) (affirming trial court's denial

of maternal aunt's petition to intervene in children's ongoing dependency proceedings, after DHS removed children from her kinship care); **Interest of D.K.**, 922 A.2d 929, 933-35 (Pa. Super. 2007) (reversing trial court's determination that prior guardian lacked standing to participate in children's dependency proceedings); **see also A.B. ex rel. H.B.**, 812 MDA 2023 (unpublished memorandum) (Pa. Super. 2024) (noting that "[a]lthough we recognize that foster parents are generally not considered parties in a dependency action, . . . prospective adoptive parents **can** establish standing as parties to intervene in dependency proceedings for the limited purpose of contesting an agency's decision to remove a child from their care," and holding trial court erred in denying foster parents' motion to intervene without a hearing and remanding for a hearing).[7]

Here, Grandmother has not made any attempt to establish standing or to seek intervention, and the trial court had no opportunity to consider such a claim. Although Grandmother testified at the permanency review hearing in opposition to DHS' request to remove the Children from her care, she did so merely as a witness called by Child Advocate. We reiterate that: (1) Pa.R.J.C.P. 133(A)-(B) states that a motion to intervene "**shall**" include certain information, and that the trial "court **shall** enter an order granting or denying the motion;" and (2) under this rule and the decisional authority,

_____

[7] **See** Pa.R.A.P. 126(b) (providing a non-precedential decision of Superior Court, after May 1, 2019, may be cited for its persuasive value).

discussed above, that standing is not automatic. Pa.R.J.C.P. 1133(A)-(B) (emphases added). Accordingly, we determine that she has failed to establish standing in this dependency matter. *See* Pa.R.J.C.P. 1133(B) (stating that "[u]pon the filing of a motion to intervene and after a hearing, the court **shall** enter an order granting or denying the motion"). We also decline to *sua sponte* make any arguments on Grandmother's behalf and then reach the merits of such arguments in order to grant to her. ***See Trust Under Deed of Wallace F. Ott***, 271 A.3d 409, 421 (Pa. Super. 2021) (stating that "[w]e shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument," and "an appellant waives any issue he fails to develop sufficiently").

For the foregoing reasons, we further conclude Grandmother lacks standing to file this appeal from the permanency review order, which removed the Children from her care. **See** Pa.R.A.P. 501. Accordingly, we quash this appeal.

Appeal quashed.

Judge McLaughlin joins the memorandum.

Judge Stabile concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>8/18/2025</u>