J-A15046-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: P.H., MATERNAL GRANDMOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 93 MDA 2018 |

Appeal from the Order Entered December 11, 2017
In the Court of Common Pleas of Huntingdon County Juvenile Division at
No(s): CP-31-DP-0000057-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: A.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: P.H. | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 95 MDA 2018 |

Appeal from the Order Entered December 11, 2017
In the Court of Common Pleas of Huntingdon County Juvenile Division at
No(s): CP-31-DP-0000058-2015

BEFORE: PANELLA, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY MURRAY, J.:                    **FILED AUGUST 30, 2018**

In these consolidated appeals, P.H. (Maternal Grandmother) appeals from the orders changing the permanent placement goals for her minor granddaughters, A.G., born in November 2013, and Ka.G., born in May 2015 (collectively, Children), from reunification to adoption. After careful review, we affirm.

The relevant facts and procedural history of this case are as follows. Maternal Grandmother is the biological grandmother of four granddaughters: S.H., Ki.G., and Children. S.H. currently resides with Maternal Grandmother and is not part of this appeal.[1] The family originally became known to the Huntington County Children and Youth Services Agency (the Agency) in August 2010, after reports were received alleging that Ki.G. lacked proper parental care and control. Dependency Petition (Ki.G.), 8/3/10, at 3 (unpaginated). The report further alleged that Children's mother, S.G. (Mother), had a criminal record that included drug charges and was refusing to cooperate with the Agency. *Id.* On August 13, 2010, the juvenile court adjudicated Ki.G. dependent, however, physical custody of Ki.G. remained with Mother.

In November 2010, Mother placed Ki.G. in the care of Maternal Grandmother and moved to Pittsburgh with her three other children. On July 6, 2011, the Agency filed a petition to transfer physical and legal custody of Ki.G. to Maternal Grandmother and appoint her as Ki.G.'s legal custodian. The juvenile court granted the petition on August 22, 2011. Thereafter, having determined that Ki.G. had been placed with a fit and willing relative, the Agency filed, and the juvenile court granted, a petition to terminate court supervision. Order, 8/22/11.

---

[1] Maternal Grandmother appealed the goal change order for Ki.G., which we address by separate memorandum at Docket No. 94 MDA 2018.

[Ki.G.] was already in the custody of [Maternal Grandmother] when Allegheny County placed S.H., A.G., and [Ka.G.] in kinship care with [Maternal Grandmother] on July 1, 2015. This placement occurred after the natural mother of the children was hospitalized following an automobile accident, which ultimately claimed her life approximately three weeks later. Allegheny County adjudicated [Ka.G.], A.G. and S.H. dependent on September 2, 2015. The Juvenile Division of the Allegheny County Court of Common Pleas subsequently transferred the cases to the Juvenile Division of the Huntingdon County Court of Common Pleas. When it became evident that [Maternal Grandmother] was overwhelmed with attempting to care [for] all four of the children, [the Agency] placed [Ki.G., A.G. and Ka.G.] in alternative foster care settings. The fourth child, whose case is not subject to this appeal, remains in kinship care with [Maternal Grandmother]. The parental rights of all of the Natural Fathers except S.H.'s (who is not subject to this appeal) have been terminated.

[Maternal Grandmother] is very well-intentioned, and has always attempted to meet the needs of her granddaughters. From the inception of these dependency matters, however, we were concerned that [Maternal Grandmother] was unable to adequately care for all of the children simultaneously. When [Maternal Grandmother] assumed the care of all four of her grandchildren in July of 2015, she was working at Weis Markets in State College, Centre County and was driving 45 minutes each way to go to work, and also leaving the children in the care of her 89-year-old mother. Services were put in place by [the Agency], but even with those services [Maternal Grandmother] was "overwhelmed" and didn't have time to address all of her household needs. The children were removed from her custody due to home condition issues and the inability to appropriately care for all of the children at one time.

Juvenile Court Opinion, 2/13/18, at 1-2 (footnotes omitted).

On November 8, 2017, the court terminated the parental rights of

Children's fathers. Trial Court Opinion, 2/13/18, at Ex. A. That same day,

the Agency petitioned for the juvenile court to conduct a permanency review

- 3 -

hearing for Children for the purpose of changing their permanency goal from reunification to adoption.

The court held a permanency review hearing on December 1, 2017, during which the Agency presented the testimony of Emily Dixon, the caseworker assigned to the family. Maternal Grandmother testified on her own behalf and presented the testimony of J.L., Ki.G.'s foster mother, as an adversarial witness. At the conclusion of the hearing, Maternal Grandmother expressed her disagreement with the Agency's position of changing Children's permanency goals to adoption. N.T., 12/1/17, at 26. Rather, Maternal Grandmother argued that Children should be returned to her care. *Id.*

Relevant to this appeal, during Maternal Grandmother's closing arguments, the following exchange took place:

> [ATTORNEY FOR MATERNAL GRANDMOTHER]: . . . My client has been working towards reunifying [Ki.G.] as her legal guardian all along. Seeking to change the goal to adoption at this point is something that we object to. She has legal standing with regard to [Ki.G.] as her legal guardian to reunify with her, and she has done what has been asked of her to do that. . . .
>
> [THE COURT]: Thank you, [attorney for Maternal Grandmother]. I'm going to take the matters under advisement.
>
> [GUARDIAN *AD LITEM*]: Can I speak briefly?
>
> [THE COURT]: You may.
>
> [GUARDIAN *AD LITEM*]: I think counsel will agree that [Maternal Grandmother] does not have legal standing to challenge the goal change as to [A.G.] and [Ka.G.]. If she does have some basis, I would like to hear it now because I don't know.
>
> [THE COURT]: I don't think she does.

[ATTORNEY FOR MATERNAL GRANDMOTHER]: I would like to speak to that.

. . .

[THE COURT]: The issue I was going to raise is the standing issue. She has status as guardian in one case and not in the other three.

[ATTORNEY FOR MATERNAL GRANDMOTHER]: I believe that the Agency has waived any standing issue with regard to [A.G.] and [Ka.G.]. They have asked [Maternal Grandmother] to do certain things to reunify. In every permanency plan that they have submitted to this Court they have indicated that [Maternal Grandmother] was to do certain things prior to getting the children back in her home.

[THE COURT]: They would be negligent if they didn't, and they probably would be violating the law. We want children to be in kinship care, and the Agency asks grandparents all the time to do things. And I think they wouldn't be doing their duty. I think you would object if they didn't give her the opportunity, if they hadn't given her the opportunity. I don't think you can have it both ways. I think the argument that we are asking for this grandmother to be able to care for the children but they shouldn't have asked us to take steps, it doesn't make sense to me.

[ATTORNEY FOR MATERNAL GRANDMOTHER]: No, I'm saying that because they have asked her to take steps, they have treated her as a party to this case and not just as a potential kinship foster home.

[THE COURT]: I think she has every right, and she should have participated all along in this case. That doesn't mean she has standing. . . .

Permanency Review Hearing, 12/1/17, at 30-33.

On December 11, 2017, the juvenile court entered its order changing

Children's permanent placement goal from reunification to adoption. Maternal

Grandmother timely filed a notice of appeal and concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Maternal Grandmother presents identical issues with regard to A.G. and Ka.G., and thus we address them together. Maternal Grandmother raises the following issues for our review:

1. Did the court below err when it continued Child's placement in a foster home, despite the fact that [Maternal Grandmother] is Child's maternal grandmother and is fully capable of caring for Child and meeting her needs in her home?

2. Did the court below err when it found that the placement of Child continued to be necessary and appropriate, when the evidence showed that [Maternal Grandmother] completed all tasks set forth in the service plan that was established for [Maternal Grandmother] to reunify with Child?

3. Did the court below err when it changed the permanent placement goal to Adoption, despite the fact that it is in Child's best interest to return to [Maternal Grandmother], with whom she previously resided?

4. Did the court below err when it found that Child's "placement is the least restrictive placement that meets the needs of the Child, and there is no less restrictive alternative available, in that the child is placed with a half-sibling in the most family like setting available," when the evidence showed that [Maternal Grandmother], who is the maternal grandmother of child, is fully capable of caring for Child in her home, which would be the least restrictive and most family-like setting available for this Child?

5. Did the court below err when it found that reasonable efforts had been made to place Child and her siblings together, when Child has one sibling residing with [Maternal Grandmother], and one sibling residing in another foster home, and despite the fact that [Maternal Grandmother] is fully capable of caring for Child and all of her siblings in [Maternal Grandmother's] home?

Maternal Grandmother's Brief (A.G.) at 19-21 (juvenile court answers omitted).[2]

Generally, the issues Maternal Grandmother presents for our review assail the change in permanency goal from reunification to adoption. Both the juvenile court, Agency and guardian *ad litem* (GAL) contend, however, that Maternal Grandmother lacks standing to challenge the goal change "because [Maternal Grandmother] does not fall in any of the categories of standing enumerated by the Superior Court and cannot be conferred status by virtue of being a grandparent, in the context of a dependency proceeding." Appellee's Brief (GAL) at 4; **see also** Trial Court Opinion, 2/13/18, at 3-5.

"An issue regarding standing to participate in dependency proceedings is a question of law warranting plenary review, and our scope of review is *de novo*." **In re C.R.**, 111 A.3d 179, 182 (Pa. Super. 2015). "[T]he question of standing is whether a litigant is entitled to have the court decide the merits of the dispute or of particular issues." **Id.** (quoting **Silfies v. Webster**, 713 A.2d 639, 642 (Pa. Super. 1998)).

Dependency proceedings are governed by the Juvenile Act, 42 Pa.C.S.A. § 6301 *et seq.* The Juvenile Act provides that all parties to a dependency

---

[2] We note Maternal Grandmother's violation of Pennsylvania Rules of Appellate Procedure 2119. The Rule provides, in pertinent part, "[t]he argument shall be divided into as many parts as there are questions to be argued[.]" Pa.R.A.P. 2119(a). However, because Maternal Grandmother's violation does not substantially impede appellate review, we decline to quash the appeal. **See In re Ullman**, 995 A.2d 1207, 1211 (Pa. Super. 2010) ("This Court may quash or dismiss an appeal if the appellant fails to conform to the requirements set forth in the Pennsylvania Rules of Appellate Procedure.").

proceeding are entitled to counsel, to present evidence, and to cross-examine witnesses. 42 Pa.C.S.A. §§ 6337, 6338; *see also In re L.C. II*, 900 A.2d 378, 380-81 (Pa. Super. 2006). This Court has defined "party" to include "(1) the parents of the juvenile whose dependency status is at issue; (2) the legal custodian of the juvenile whose dependency status is at issue, or (3) the person whose care and control of the juvenile is in question." *In re J.S.*, 980 A.2d 117, 120 (Pa. Super. 2009). Foster parents, kinship parents, pre-adoptive parents, and other caregivers, however, are not automatically considered parties to a dependency proceeding. Rather, a non-parent's right to participate in a dependency proceeding is governed by Section 6336.1 of the Juvenile Act, which states:

> The court shall direct the county agency or juvenile probation department to provide the child's foster parent, pre[-]adoptive parent or relative providing care for the child with timely notice of the hearing. The court shall provide the child's foster parent, pre[-]adoptive parent or relative providing care for the child the right to be heard at any hearing under this chapter. **Unless a foster parent, pre[-]adoptive parent or relative providing care for a child has been awarded legal custody pursuant to section 6357 (relating to rights and duties of legal custodian), nothing in this section shall give the foster parent, pre[-]adoptive parent or relative providing care for the child legal standing in the matter being heard by the court.**

42 Pa.C.S.A. § 6336.1(a) (emphasis added). Therefore, the Juvenile Act is clear that if a foster parent, pre-adoptive parent, or relative providing care for a child has not been granted legal custody of the child, he or she does not have standing to participate as a party in the dependency proceeding, and instead is entitled to notice of the hearing and the opportunity to be heard.

Maternal Grandmother does not contend, and the record does not reflect, that she was awarded legal custody of Children. To the contrary, the Agency is their legal custodian. **See** Permanency Review Order, 12/11/17, at 6. Instead, Maternal Grandmother argues that because she was treated like a party, she has standing to challenge the juvenile court's permanency review order. Maternal Grandmother's Reply Brief (A.G) at 1. Alternatively, Maternal Grandmother asserts that even if she lacks standing, both the Agency and GAL are estopped from raising the issue now because they failed to make a timely objection to her treatment as a party. **Id.** at 3.

Pursuant to Section 6336.1(a), Maternal Grandmother does not have standing, she does not have the rights of a party, *i.e.*, the right to counsel, to call witnesses, to conduct cross-examination, and to file an appeal. **See** 42 Pa.C.S.A. §§ 6336.1(a), 6337, 6338; Pa.R.A.P. 501. To the extent that the juvenile court denied Maternal Grandmother any of these opportunities, the juvenile court did not err.

However, pursuant to Section 6336.1(a), Maternal Grandmother was entitled to notice of the hearing and an opportunity to be heard. The record reflects that the juvenile court permitted Maternal Grandmother to be heard at the December 1, 2017 hearing. It allowed Maternal Grandmother to express her position, to update the court about her care of Children, and to rebut the contentions of the Agency's testifying witness. N.T., 12/1/17, at 18-24. Indeed, the juvenile court went beyond merely allowing Maternal Grandmother "to be heard," as it appointed her counsel and allowed her to

call witnesses to testify on her behalf. *Id.* at 11-15. Maternal Grandmother provides no legal authority, nor are we aware of any, that supports her contention that such treatment by the juvenile court conferred her with legal standing. To the contrary, our case law is clear that kinship foster parents do not have standing to participate in dependency proceedings. 42 Pa.C.S.A. § 6336.1 ("**nothing** in this section shall give the foster parent, preadoptive parent or relative providing care for the child legal standing in the matter being heard by the court.") (emphasis added). We therefore find that the juvenile court did not err in its treatment of Maternal Grandmother at the hearing.

Moreover, we likewise reject Maternal Grandmother's assertion that the Agency/GAL waived the challenge to standing because it failed to timely object. The record reveals that Maternal Grandmother first asserted her right to standing at the December 1, 2017 permanency review hearing. Children's GAL immediately made a contemporaneous objection, stating plainly on the record that he believed Maternal Grandmother lacked legal standing to challenge Children's goal change.

Pertinently, because we have concluded that Maternal Grandmother lacked standing, we are without jurisdiction to decide the merits of her issues. ***See K.B. II v. C.B.F.***, 833 A.2d 767, 774 (Pa. Super. 2003) ("When a statute creates a cause of action and designates who may sue, the issue of standing becomes interwoven with that of subject matter jurisdiction. Standing then becomes a jurisdictional prerequisite to an action.") (emphasis omitted).

Maternal Grandmother's lack of standing is dispositive in this appeal. Accordingly, we affirm the permanency review orders changing the Children's placement goals from reunification to adoption.[3]

Orders affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/30/2018

---

[3] We reiterate that our holding is mandated by the language of the Juvenile Act; to the extent our decision may be perceived as draconian, we are cognizant of and note that the juvenile court has demonstrated thoughtful consideration in presiding over this case, including its efforts to maintain the siblings' relationships through their visits with Maternal Grandmother every other weekend.