J-A25009-17

2018 PA Super 11

| IN THE INTEREST OF: J.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| APPEAL OF: O.T., FORMER FOSTER PARENT | : | |
| | : | No. 895 EDA 2017 |

Appeal from the Order Entered February 10, 2017
in the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0002505-2011

| IN THE INTEREST OF: A.V., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| APPEAL OF: O.T., FORMER FOSTER PARENT | : | |
| | : | No. 897 EDA 2017 |

Appeal from the Order Entered February 10, 2017
in the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0002507-2011

BEFORE:   OTT, J., STABILE, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:                    **FILED JANUARY 22, 2018**

Appellant, former foster parent O.T. ("O.T."), files these consolidated appeals from the orders dated and entered February 10, 2017, in the Philadelphia County Court of Common Pleas, removing J.P., a male born in December 2011, and A.V., a female born in May 2007 (collectively, the "Children"), from O.T.'s home.  We affirm.

_____
*   Former Justice specially assigned to the Superior Court.

Subsequent to the grant of emergency custody on December 20, 2011, the Children were adjudicated dependent on January 26, 2012.[1] At that time, the Children were placed in a Children's Choice foster home with O.T. Initially, the Children's permanency goal was reunification with their parent. Thereafter, the court conducted regular permanency review hearings to assess the Children's status. Pursuant to goal change petitions, A.V.'s permanency goal was changed to adoption on September 29, 2015, and J.P.'s permanency goal was changed to adoption on March 10, 2016.[2]

Master Alexis Ciccone presided over a permanency review hearing on September 9, 2016. When discussing concerns related to the Children's placement with O.T., caseworkers informed the master that the approval of O.T.'s family profile had been delayed as O.T. and her boyfriend had failed to provide certain documentation including fingerprints as well as medical and financial information. Notes of Testimony (N.T.), 9/9/16, at 8, 12. O.T. had not retained an attorney to assist her in seeking to adopt the Children. In

_____

[1] The Children have three siblings through their mother, A.P. ("Mother"), none of whom is a subject of this matter. Two of these siblings are also in care, but placed separately. Notes of Testimony ("N.T."), 12/2/16, at 20; N.T., 9/9/16, at 20-21. Mother had substance abuse issues and lacked appropriate housing. **See** Dependency Petition, 12/27/11; Application for Order of Protective Custody, 12/20/11.

[2] On September 29, 2015, Mother's parental rights were involuntarily terminated. This Court affirmed this decision in a memorandum filed on July 21, 2016 at 3210 EDA 2015 & 3219 EDA 2015. The parental rights of A.V.'s father, J.M.V., Sr., were terminated by separate decree on the same date.

addition, Community Umbrella Agency ("CUA") case manager, Jose DeJesus, raised concerns that O.T. may have been abusing prescription medication.[3] *Id*. at 9-10.

As a result, the master ordered O.T. to submit to random drug testing and a dual diagnosis evaluation through the Clinical Evaluation Unit ("CEU"). O.T. indicated that she had been prescribed medication for pain and high blood pressure after being injured in a car accident. *Id*. at 13-14. At the close of the hearing, the master informed O.T. of the next hearing date of December 2, 2016 and also provided her a copy of the order from this hearing, which noted the date, time, and location of the next hearing.

At the December 2, 2016 hearing before Master Ciccone, the Department of Human Services ("DHS") and the Child Advocate requested the matter be listed for a judicial removal hearing. Despite receiving notice of this hearing, O.T. did not attend, but was subpoenaed for the next hearing date. Mr. DeJesus informed the master that after O.T.'s drug screen indicated the presence of several controlled substances, the Children were removed from her home and placed in a Bethany Christian Services foster home on September 14, 2016. N.T., 12/2/16, at 7, 11.

---

[3] At a later hearing, Mr. DeJesus asserted that it had been difficult to recognize irregularities in O.T.'s behavior as a result of her anxiety and CUA's inability to perform unannounced, pop-up visits. N.T., 2/10/17, at 22.

On February 10, 2017, at the next hearing, again presided over by Master Ciccone, Mr. DeJesus confirmed that the Children had been removed from O.T.'s home as her drug screen was positive for high levels of opiates, benzodiazepines, marijuana, and cocaine; the readings for all substances exceeded levels that the testing device was able to measure.[4]   N.T., 2/10/17, at 8-9, 16, 33.  When Children's Choice was notified of the Children's removal, O.T. lost her certification as a foster parent.  *Id.* at 3, 10-11.

While O.T.'s family assured Mr. DeJesus they would assist her to seek help in the form of therapy and treatment, he was unaware as to whether she had engaged in a drug treatment program.  *Id.* at 8, 9, 12.  Critically, O.T. never provided Mr. DeJesus any explanation for her positive drug screen.  Thus, Mr. DeJesus opined that there were "serious safety concerns concerning [O.T.'s] ability to properly care for the [Children]" and it was in their best interests to be removed from her home permanently.  *Id.*

O.T., who was present and permitted to testify, indicated that she was prescribed opiate pain medication for an injury to her knee from an accident in January 2016 and took benzodiazepines as needed for anxiety attacks.[5]  *Id.* at 12-13.  She did not acknowledge that the amount of prescription drugs measured in her blood test far exceeded therapeutic levels, was unable to

---

[4] The report containing the results from this drug screen was not entered as an exhibit and was not included as a part of the certified record.

[5] While the master found O.T. did not have standing, the Master allowed her to testify on her own behalf during the proceeding.  N.T., 2/10/17, at 5, 12.  O.T.'s counsel was allowed to speak upon his late arrival.  *Id.* at 31-35.

explain the presence of cocaine in the blood, and was unwilling to admit she had any problem, stating, "I didn't need help. I'm not a drug addict. . . ." *Id.* at 12-13, 18. In response to the master's inquiry as to why she did not engage in rehabilitation, O.T. indicated, "I don't need rehab. I'm not on drugs. I went to a party. The kids went down the shore. I went to a party, smoked marijuana. They were drinking. . . ."[6] *Id.* at 17-18. As to the presence of cocaine, she continued, "I don't know if -- I don't know what happened that night really. And I'm sorry it happened." *Id.* at 18.

DHS argued that the Children's removal from O.T.'s home is in their best interests, maintaining that they were removed due to "an obvious safety risk." *Id.* at 15. The Child Advocate joined in this argument. *Id.* In opposition, O.T. argued that the Children had been with her for five years and that, notably, J.P. had been in her care essentially his entire life. *Id.* at 19-20. Master Ciccone agreed with DHS and the Child Advocate and issued a Permanency Review Order with the finding that "a judicial removal from [O.T.'s] home is in the best interest of the child by clear and convincing evidence," Master's Recommendation – Permanency Review, 2/10/17. The trial court adopted the master's recommendation on that same date. *Id.*

---

[6] Although O.T. allegedly attended a detoxification program, she asserted that she lied that she had a drug problem in order to enter this program in an attempt to get the Children back. N.T., 2/10/17, at 13. While O.T. claimed to have given Children's Choice a certificate of completion of this unspecified program, proof of completion was not presented or acknowledged at these proceedings. She further alleged that she passed a drug test in October 2016 without providing any further information or documentation. *Id.* at 21.

On March 13, 2017, O.T. filed notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this Court consolidated on April 5, 2017.

O.T. raises the following issues for our review:

1. Did Judge Olszewski err in his opinion when he held that [O.T.'s] failure to file a challenge to the Master's recommendation in the prescribed three-day period pursuant to Pa.[]R.J.C.P. 1191 constituted a waiver of any issue that would challenge the Master's recommendation and that such waiver precludes the instant appeal?

2. Did the trial court err in denying standing to [O.T.], a prospective adoptive parent, in the Judicial Removal proceeding on February 10, 2017, when it was ordered that her prospective adoptive children were to be removed from her care?

3. Did the trial court err in denying [O.T.] her 42 Pa.C.S.A. § 6336.1 statutory right to notice and to be heard in violation of procedural due process at the dependency hearings on December 2, 2017 and to fully be heard with the assistance of her attorney on February 10, 2017, prior to the [c]ourt making its recommendation to judicially remove the [C]hildren from her care?

4. Did the trial court err in following the recommendation of D.H.S. and the child advocate, in finding that it was in the children's best interest to be removed from [O.T.'s] home, where the [C]hildren had resided and thrived for almost five years?

O.T.'s Brief at 5.

In a dependency case, our standard of review is as follows:

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the

- 6 -

lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

***In re R.J.T.***, 9 A.3d 1179, 1190 (Pa. 2010).

We first review the trial court's finding that O.T. waived all issues on appeal by failing to challenge the Master's recommendation within three days of her receipt of the recommendation, pursuant to Pennsylvania Rule of Juvenile Court Procedure 1191. This rule provides in relevant part:

> **RULE 1191. MASTER'S FINDINGS AND RECOMMENDATION TO THE JUDGE**
>
> . . .
>
> C. **Challenge to Recommendation.** A party may challenge the master's recommendation by filing a motion with the clerk of courts within three days of receipt of the recommendation. The motion shall request a rehearing by the judge and aver reasons for the challenge.
>
> D. **Judicial Action.** Within seven days of receipt of the master's findings and recommendation, the judge shall review the findings and recommendation of the master and:
>
> 1) accept the recommendation by order;
>
> 2) reject the recommendation and issue an order with a different disposition;
>
> 3) send the recommendation back to the master for more specific findings; or
>
> 4) conduct a rehearing.

Pa.R.J.C.P. 1191.

In this case, the trial court found that O.T.'s failure to challenge the master's recommendation pursuant to Pa.R.J.C.P. 1191 deprived it of the ability to issue an appealable order. However, Rule 1191 does not require a

party to challenge a master's recommendation, but provides that a party "may" file a motion to request a rehearing before the trial court. Section 6305(d) of the Juvenile Act provides that "[a] rehearing before the judge may be ordered by the judge at any time upon cause shown. Unless a rehearing is ordered, the findings and recommendations [of the master] become the findings and order of the court when confirmed in writing by the judge." 42 Pa.C.S.A. § 6305(d). Moreover, this Court has held that "neither the Juvenile Act, nor the Rules of Juvenile Court Procedure, provides that parties have a right to a rehearing after a dependency hearing before a master. The Juvenile Act provides that a court 'may' order a rehearing, but only upon cause shown." *In Interest of H.K.*, 172 A.3d 71, 76 (Pa.Super. 2017) (citing 42 Pa.C.S.A. § 6305(d)). *See In re A.M.*, 530 A.2d 430, 432 (Pa.Super. 1987) (finding "there is no requirement to file exceptions to the master's report to preserve issues on appeal"). Accordingly, we decline to find waiver of O.T.'s claims on appeal on this basis.

We next address O.T.'s claims that the lower court erred in (1) finding she lacked standing as a party in the dependency proceedings and (2) denying her the opportunity to be heard. O.T. argues that the trial court failed to appreciate that she was a "prospective adoptive parent" when the Children were removed from her home. O.T.'s Brief, at 17. An issue regarding standing to participate in dependency proceedings is a question of law warranting plenary review, and our scope of review is *de novo*. *In re S.H.J.*, 78 A.3d 1158, 1159 (Pa.Super. 2013).

The Juvenile Act defines "dependent" child as one who is without proper parental control or has been abandoned by, or is without parent, guardian, or legal custodian. 42 Pa.C.S.A. § 6302. With respect to dependency hearings, this Court has clarified that three classes of individuals have standing to participate as a party:

> Party status in dependency proceedings is limited to only three classes of persons: "(1) the parents of the juvenile whose dependency is at issue; (2) the legal custodian of the juvenile whose dependency is at issue; or[;] (3) the person whose care and control of the juvenile is in question." *In the Interest of L.C., II,* 900 A.2d 378, 381 (Pa.Super. 2006).
>
> These categories logically stem from the fact that upon an adjudication of dependency, the court has the authority to remove a child from the custody of his or her parents or legal custodian. Due process requires that the child's *legal caregiver,* be it a parent or other custodian, be granted party status.

*In re C.R.*, 111 A.3d 179, 184–85 (Pa.Super. 2015) (citing *In re S.H.J.*, 78 A.3d at 1160–61). The Juvenile Act provides that all parties to a dependency proceeding are entitled to counsel and have the right to present evidence and cross-examine witnesses. 42 Pa.C.S.A. §§ 6337, 6338.

Section 6336.1 of the Juvenile Act specifies that a foster parent does not have standing to participate as a party in a dependency proceeding absent an award of legal custody, but nonetheless is entitled to notice of the relevant dependency hearing and an opportunity to be heard. 42 Pa.C.S.A. § 6336.1. This section provides in relevant part:

**§ 6336.1.  Notice and hearing**

> **(a) General rule.**—The court shall direct the county agency or juvenile probation department to provide the child's foster parent, preadoptive parent or relative providing care for the child with timely notice of the hearing. The court shall provide the child's foster parent, preadoptive parent or relative providing care for the child the right to be heard at any hearing under this chapter. **Unless a foster parent, preadoptive parent or relative providing care for a child has been awarded legal custody pursuant to section 6357 (relating to rights and duties of legal custodian), nothing in this section shall give the foster parent, preadoptive parent or relative providing care for the child legal standing in the matter being heard by the court.**

42 Pa.C.S.A. § 6336.1 (emphasis added).

Our precedent has also consistently confirmed that foster parents do not have party standing in dependency proceedings unless they have been granted legal custody. In a nearly identical case, ***In the Interest of J.F.***, 27 A.3d 1017 (Pa.Super. 2011), this Court affirmed the trial court's decision to grant DHS permission to remove the child from a foster mother's home. Although the child was placed in this foster home for the "purposes" of adoption, this Court found the preadoptive foster mother lacked standing pursuant to Section 6336.1, as the agency retained legal custody of the child. ***Id.*** at 1018, 1021. As a result, the Court went on to further hold that the foster mother was entitled, under Section 6336.1, to notice and an opportunity to be heard, but not to participate in the hearing by rebutting testimony of witnesses, calling her own witnesses, and submitting exhibits. ***Id.***

Similarly, in ***In re J.S.***, 980 A.2d 117 (Pa.Super. 2009), this Court reversed a grant of permission for foster parents (who were the child's aunt

- 10 -

and uncle) to intervene in a dependency proceeding. Citing to Section 6336.1, this Court reasoned that the foster parents lacked standing both to participate in the hearing and to review the juvenile court record as they did not fall within the narrow class of individuals deemed parties to a dependency proceeding. *Id.* at 122-23. The panel indicated that the foster parents could not stand *in loco parentis* to the child because their status as foster parents was "subordinate to the [agency, which] maintained legal custody and was primarily responsible for the child's care and custody." *Id.* at 122 n.4.

O.T. does not attempt to argue that she qualifies as a party to the dependency proceeding under one of the three enumerated categories in Section 6336.1 that would confer standing to intervene. Instead, O.T. contends that she has standing as a prospective adoptive parent pursuant to this Court's decision in *In re Griffin*, 690 A.2d 1192 (Pa.Super. 1997).[7] Recognizing that *In re Griffin* was decided before the enactment of Section 6336.1, O.T. argues that this statute does not preclude prospective adoptive parent standing, which O.T. characterizes as a term derived from common law that is distinct from the pre-adoptive parent identified in Section 6336.1. O.T's Brief, at 24-26. In the alternative, O.T. claims that, even if she lacks standing, she was denied proper notice and the opportunity to be heard at the December

---

[7] The Court in *Griffin* held that, under the unique factual circumstances in that case, the preadoptive foster parents had standing to challenge the removal of the children from their home.

2016 and February 2017 permanency review hearings pursuant to Section 6336.1. *Id.* at 28.

However, O.T. never raised these arguments before the trial court, but attempts to raise them for the first time on appeal. *See* Pa.R.A.P. 302(a) (providing for waiver of issues not first raised in lower court); *In re S.H.J.*, 78 A.3d at 1161-63 (finding that the children's maternal aunt waived her argument that she should have been granted standing as a prospective adoptive parent). Accordingly, we find that O.T. waived her challenges to standing and due process by her failure to raise them in the lower court.

Moreover, even assuming that O.T. had properly preserved this issue in the lower court, we need not analyze whether this Court's holding in *Griffin* is applicable law, as there is no factual support in the record to support O.T.'s claim that she was a prospective adoptive parent. Legal custody of the Children remained with DHS at all times. As the Children were not placed with O.T. for purposes of adoption, no adoption placement agreement was entered. As neither petitions for adoption nor reports of intent to adopt were filed, the proceeding remained a dependency proceeding under the Juvenile Act. Notably, O.T. had not taken the preliminary steps toward adoption; O.T. failed to complete her family profile by submitting necessary documentation, including fingerprints as well as medical and financial information for herself and her boyfriend. Further, O.T. had not retained an adoption attorney. Moreover, at the time of the filing of this matter, O.T. was no longer a certified foster parent due to her unresolved substance abuse issues. N.T., 2/10/17,

- 12 -

at 10-11. As a result, we discern no error or abuse of discretion on the part of the trial court in finding that O.T. lacked standing.

Likewise, we find no support in the record for O.T.'s assertions that she was denied proper notice and opportunity to be heard. The record shows that O.T. was given advance notice of all proceedings. At the February 10, 2017 proceeding, O.T. was afforded the opportunity to speak and be heard; O.T. answered the Master's questions and was permitted to testify. *Id*. at 5, 12-14, 17-21. In addition, upon the late arrival of O.T.'s counsel from another courtroom, the court acknowledged and explained its decision to O.T.'s attorney, who was permitted to offer argument on O.T.'s behalf.[8] *Id.* at 31-35. Therefore, any allegation by O.T. that she was denied notice and opportunity to be heard under Section 6336.1 is without merit.

O.T.'s final argument challenges the merits of the trial court's ruling. Based on our conclusion that O.T. lacked standing to participate in the dependency hearing, we lack jurisdiction to review her remaining claim. *In re J.F.*, 27 A.3d at 1025 (quoting *K.B. II v. C.B.F.,* 833 A.2d 767, 774 (Pa.Super. 2003) ("When a statute creates a cause of action and designates who may sue, the issue of standing becomes interwoven with that of subject

---

[8] We observe that, despite arguing the existence of a bond between O.T. the Children and emphasizing that O.T. had raised J.P. for essentially his entire life, counsel appeared to admit O.T. was not entitled to relief, stating, "I suspect there's nothing that can be done at this level or at this proceeding right now." N.T., 2/10/17, at 32. We recognize that an argument related to the existence of a bond was also found to be ineffective as it relates to standing in *In re S.H.J.*, 78 A.3d at 1161-62 (stating, the existence of a bond "is not a relevant factor in determining standing.").

- 13 -

matter jurisdiction. Standing then becomes a jurisdictional prerequisite to an action")).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/22/18