J-S42033-19 & J-S42034-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: T.A.H., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.H. | : : : : : : : : | |
| | : | No. 475 EDA 2019 |

Appeal from the Order Entered January 15, 2019
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0000923-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: T.H., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.H. | : : : : : : : : | |
| | : | No. 476 EDA 2019 |

Appeal from the Order Entered January 15, 2019
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-DP-0002109-2015

BEFORE:   OTT, J., KUNSELMAN, J., and COLINS*, J.

MEMORANDUM BY COLINS, J.:                **FILED AUGUST 29, 2019**

T.H., former kinship parent ("FKP"), appeals *pro se* from the order at Docket Number CP-51-DP-0002109-2015 ("No. DP-2109-15") dated January 15, 2019, terminating court supervision of T.A.H. ("Child") (born July 2015), ending services from the Philadelphia Department of Human Services ("DHS"), discharging the related dependency petition, and granting unsubsidized legal custody of Child to C.S., Child's maternal grandmother

_____
*   Retired Senior Judge assigned to the Superior Court.

("Grandmother"). FKP additionally appeals *pro se* from the order at Docket Number CP-51-AP-0000923-2015 ("No. AP-923-15") dated January 15, 2019, denying FKP's petition for adoption of Child as moot and finding Child is not a "dependent child" under the Juvenile Act.[1] We vacate both orders and remand for further proceedings consistent with this decision.

The factual and procedural history of No. DP-2109-15 was previously set forth by this Court, as follows:

> [DHS] became involved with this family on July 27, 2015, after DHS received a General Protective Services ("GPS") report, which alleged that Child's biological mother had tested positive for marijuana; biological mother only had one scheduled prenatal appointment; biological mother considered placing Child for adoption but had a change of heart; biological mother considered sending Child to live with relatives; biological mother admitted to marijuana use; biological mother was not prepared to care for Child; biological mother wanted her relative, FKP, to care for Child. This GPS report was substantiated. On July 29, 2015, DHS obtained an Order of Protective Custody ("OPC") for Child and she

---

[1] 42 Pa.C.S. §§ 6301-6375.

> The Juvenile Act was enacted, insofar as is relevant here, "[t]o provide for the care, protection, safety and wholesome mental and physical development of children coming within the provisions of [the Act]." 42 Pa.C.S. § 6301(b)(1.1). . . . Apart from juvenile delinquency and similar proceedings that are not at issue here, the Juvenile Act provides that it "shall apply exclusively to ... [p]roceedings in which a child is alleged to be ... dependent." 42 Pa.C.S. § 6303(a)(1).

***In re J.M.***, 166 A.3d 408, 417 (Pa. Super. 2017), *reargument denied* (August 3, 2017).

was placed in the care of FKP.[2] Child was adjudicated dependent on August 19, 2015 and the [dependency] court[3] found that both biological mother and biological father wanted to sign voluntary relinquishment of parental rights petitions as to Child. Biological mother signed a petition to voluntarily relinquish her parental rights to Child on November 4, 2015, and Father signed a petition to voluntarily relinquish his parental rights to Child on November 5, 2015.

Child remained in FKP's care until February 3, 2017. On that date, the [dependency] court ordered Child to be removed from FKP's home and be placed forthwith due to safety concerns. Child was removed from FKP's home on February 6, 2017. At the permanency review hearing on March 21, 2017, FKP was granted supervised visits with Child at the agency twice per week. At the permanency review hearing on July 18, 2017, the [dependency] court granted temporary physical custody to FKP with DHS and the Community Umbrella Agency ("CUA") to supervise. Kinship care was re-implemented into FKP's home in November 2017.

In November 2017, CUA visited FKP's home. CUA noticed that although FKP's home was clean, there were minimal things in the home for Child. Child's bedroom only included a bed and limited clothing on the hangers in the closet. Additionally, CUA noticed that there was no food in the home. When CUA questioned FKP, FKP explained that she and her husband were trying to sell their home and the family went out to eat every night. Later in November, CUA subsequently visited FKP in her new apartment. CUA observed minimal things in the home, similar to the previous home visit. CUA did not notice any signs of a recent move. In the refrigerator, CUA only found some water bottles, juice and a couple [of] fruit cups. CUA also only observed a couple [of] boxes of cereal in the cupboards. When CUA visited Child's bedroom, CUA noticed that Child's bed was a small cot with a mattress with no other furniture. Child's closet had bins but minimal clothing available for Child. FKP informed CUA that items for the home were on their way, including a bed for Child. CUA found the home

---

[2] Also on July 29, 2015, the dependency court appointed counsel to represent Child.

[3] Hereinafter, the trial court for No. DP-2109-15 will be referred to as "the dependency court" in order to distinguish it from the trial court for No. AP-923-15, which will be referred to as "the adoption court".

to be appropriate at this visit, taking FKP's recent move into consideration.

Between November and December 2017, DHS received a GPS report. On December 5, 2017, the foster care agency visited FKP's home and informed CUA on December 11, 2017 that there was no food in the refrigerator; there was no car seat for Child; there were concerns regarding Child's clothing; Child was still sleeping on a cot and there was no new bed in the home; there were discrepancies with the family profile; DHS would not approve the family profile. CUA reached out to FKP after receiving the report from the foster care agency to arrange a visit and to address the allegations, but FKP informed CUA that they could not visit FKP's home because she was in Florida with Child until December 22, 201[7]. CUA indicated that FKP never received permission to take Child to Florida and CUA was unaware that Child was in Florida.

On December 21, 2017, CUA determined that Child was to be removed from the home. CUA and DHS visited FKP's home on December 22, 201[7]. CUA conducted a walkthrough of FKP's home. CUA observed that Child was still sleeping on a cot with a stained mattress. Child's bedroom still had no other furniture and Child still only had minimal clothes available in the closet. CUA also observed that the refrigerator had the same contents that [were] observed in November 2017. FKP and DHS['s] conversation had escalated after FKP was informed that Child would be removed from the home and CUA contacted the police to assist with the removal. Child was removed from FKP's home and placed into a different foster home on December 22, 201[7].

On January 18, 2018, a status review hearing was held for Child. The [dependency] court ordered FKP [to] remove all social media posts related to Child, including pictures, images, and videos, and that FKP was not permitted to post anything related to Child in the future. A judicial removal hearing was scheduled for March 22, 2018.

On March 22, 2018, the [dependency] court heard testimony from the CUA case manager, the DHS permanency worker, the CUA NET supervisor, the family profile writer, and FKP. The [dependency] court granted the judicial removal retroactive to December 22, 2017. The [dependency] court additionally determined that Child should not be returned to FKP's care and that FKP has no standing under the dependency petition.

*In re T.H.*, No. 1191 EDA 2018, unpublished memorandum at 1-3 (Pa. Super. filed December 20, 2018) (citation omitted). Immediately after the dependency court entered its order dated March 22, 2018, FKP filed a petition to adopt Child. On April 19, 2018, FKP filed an appeal of the order entered March 22, 2018.

While this appeal was pending, the dependency court conducted permanency review hearings on May 15, October 16, and December 4, 2018. At each of these hearings, the dependency court determined that placement of Child continued to be necessary and appropriate and that the current placement goal was adoption. At the December hearing, the dependency court awarded temporary physical custody to Grandmother. Permanency Review Order, 12/4/2018, at 1.

On December 20, 2018, this Court reversed the order of March 22, 2018. *T.H.*, No. 1191 EDA 2018, unpublished memorandum at 1. This Court stated:

> FKP first argues that the [dependency] court erred in denying her standing to contest DHS's decision to remove Child, who had been placed with her in anticipation of adoption. We agree. . . . [P]readoptive parents have standing in [dependency] court to contest an agency's decision to remove a foster child from their physical custody. . . .
>
> [T]he [dependency] court conceded that FKP was a preadoptive parent prior to DHS's decision to remove Child from her care. . . .
>
> [W]e are compelled to conclude that the [dependency] court erred as a matter of law in limiting FKP's involvement at the dependency hearing. . . .

[H]aving concluded that FKP meets the requirements of party status, she is likewise entitled to counsel. Her attorney should not have been excluded from the hearing.

Accordingly, . . . we are compelled to reverse the [dependency] court's order so that FKP, as a preadoptive parent, can participate fully in the dependency proceedings concerning DHS's decision to remove Child from her care and is entitled to full representation by counsel.

Order reversed. Case remanded for further proceedings.

*Id.* at 6-8 (footnote omitted).

On January 15, 2019, a permanency review hearing was held at No. DP-2109-15 before the Honorable Joseph L. Fernandes. There is no indication in the record that FKP was given notice of this hearing or that the dependency court ever conducted new proceedings concerning DHS's decision to remove Child from FKP's care.

At the conclusion of this hearing, the dependency court granted unsubsidized permanent legal custody to Grandmother and consequently discontinued services from DHS. Order for Termination of Court Supervision, filed January 15, 2019, at 1. The dependency court ordered the termination of court supervision and discharged the dependency petition. *Id.*

Later that same day, a status hearing was held before the Honorable Daine Grey, Jr., about FKP's petition for adoption of Child at No. AP-923-15. "At the conclusion of the hearing, th[e adoption c]ourt issued a decree finding the [p]etition for adoption moot as there [are] no pending actions to intervene from DHS as that petition was discharged by the [dependency c]ourt." Adoption Court Opinion, filed April 26, 2019, at 3; *see also id.* at 5 ("DHS no

- 6 -

longer has custody of the Child. Therefore, DHS is not affected by the controversy in question.").

On February 11, 2019, FKP *pro se* filed two timely notices of appeal, one each for No. DP-2109-15 and No. AP-923-15, accompanied by concise statements of errors complained of on appeal as directed by Pa.R.A.P. 1925(a)(2)(i). However, at this time, FKP was represented by counsel. Generally, "hybrid representation is not permitted" on appeal, but this Court is required to docket a *pro se* notice of appeal, "even in instances where the pro se appellant was represented by counsel in the trial court." ***Commonwealth v. Williams***, 151 A.3d 621, 623 (Pa. Super. 2016) (emphasis and internal brackets omitted) (citation omitted). Nevertheless, this exception does not extend to concise statements of errors. Accordingly, on February 22, 2019, this Court entered an order directing counsel to file amended concise statements of errors in these appeals no later than March 6, 2019. On February 28, 2019, FKP *pro se* filed an amended concise statement of errors. On March 6, 2019, FKP's counsel filed a document with this Court entitled "Amended Statement of Matters Complained of on Appeal" but merely stating: "1. The matters complained of on appeal filed by [FKP], pro se, attached hereto, are hereby incorporated by reference. 2. Such other matters as may be determined by review of transcripts by future counsel for Appellant." Amended Statement of Matters Complained of on Appeal, 3/6/2019, ¶¶ 1-2. Counsel attached FKP's *pro se* amended concise statement

of errors thereto. Later that same day, FKP's counsel filed motions to withdraw representation at both No. DP-2109-15 and No. AP-923-15. On March 26, 2019, the dependency court granted counsel's motion to withdraw as counsel for FKP. Two days later, the adoption court did the same. This Court could find waiver for FKP's counsel's failure to file a concise statement of errors when ordered to do so by this Court. ***Mudge v. Mudge***, 6 A.3d 1031 (Pa. Super. 2011); ***J.M.R. v. J.M.***, 1 A.3d 902 (Pa. Super. 2010). Nonetheless, we believe that counsel's filing from March 6, 2019, is sufficient to satisfy this Court's order, and, *ergo*, we will not find waiver and will proceed to address FKP's substantive issues.[4]

FKP presents the following issues for our review:

1. Did the [dependency] court commit an error of law and court procedures by denying [FKP's] request to remand the case when it was decided by the Superior Court of P[ennsylvania] that the preadoptive parent had standing and the right to contest the agency removal decision, present evidence and cross examine witnesses?

2. Did the [dependency] court err in determining the child's best interest was with the maternal grandmother providing her with [permanent legal custody] when according to the record, the child has a strong bond with [FKP] who stood in locos parentis for

---

[4] The adoption court entered its opinion on April 26, 2019, and the dependency court entered its opinion on June 7, 2019. ***See*** Pa.R.A.P. 1925(a)(2)(ii).

On June 18, 2019, DHS advised this Court that it would not be filing a brief in the adoption appeal, Docket No. 475 EDA 2019. Letter from Robert D. Aversa, Deputy City Solicitor, to Benjamin Kohler, Esquire, Deputy Prothonotary (June 18, 2019). DHS filed a brief in the dependency appeal, Docket No. 476 EDA 2019.

2 years and desired to adopt the child while the child was only in maternal grandmother care for 39 days?

3. Did the [dependency] court err in not remedying the defect of the child's attorney when it was determined that the child attorney never spoke to any witnesses who appeared on behalf of child, never cross examined [FKP], and did not contest any removal decisions by DHS to the detriment of the child who resided with strangers moving through 4 foster care homes within 1 year when there were 4 legal custody petitions filed by the child's family?

4. Did the [dependency] court err in denying [FKP's] motion for discovery, public apology and reimbursement of legal expenses when according to the record CUA and DHS seized a child from her preadoptive home without a court order or warrant and judicially deceived the court when they testified under oath and penalty of perjury that they did not know about a planned holiday vacation and that there was no food or car seat available for the child?

5. Did the [dependency] court err in law by not determining if reasonable efforts were made by the Philadelphia Department of Human Services and NET Community Care to reunify the child with her preadoptive parent when it was discovered by the court 6 months earlier that the safety complaint made against preadoptive parent was unfounded?

6. Did the [adoption] court err in law allowing DHS and the child's lawyer to contest the adoption and speak on the child's behalf when they no longer had legal custody of the child or the right to make legal decisions per court order?

7. Did the [adoption] court err in determining the adoption petition was moot when the petition was not filed by DHS and [u]nder Pennsylvania law, an individual that stands "in locos parentis" and with the agreement of the birth parents or legal guardian who filed a motion to amend the adoption petition was sufficient to sustain the adoption petition?

FKP's Brief, No. 475 EDA 2019, at 3-4; FKP's Brief, No. 476 EDA 2019, at 4-5.[5]

> In [**In re**] **L.Z.**, [111 A.3d 1164 (Pa. 2015),] the Supreme Court stated:
>
>> "The standard of review in dependency cases requires an appellate court to accept findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law." **In re R.J.T.**, 608 Pa. 9, [27], 9 A.3d 1179, 1190 (Pa. 2010). We review for abuse of discretion.
>
> **L.Z.**, 111 A.3d at 1174. In addition, we have observed:
>
>> In dependency proceedings our scope of review is broad. ... Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate.
>
> **In re C.B.**, 861 A.2d 287, 294 (Pa. Super. 2004) (quoted citation omitted), **appeal denied**, 582 Pa. 692, 871 A.2d 187 (2005).

**In re J.M.**, 166 A.3d 408, 416 (Pa. Super. 2017), *reargument denied* (August 3, 2017).

Prior to reaching FKP's issues, we begin with a brief review of the relevant statutory provisions of the Juvenile Act.

A child is "dependent" if he or she:

> (1) is without proper parental care or control, subsistence, education as required by law, or other care or control

---

[5] FKP's statement of questions involved in her brief for No. 475 EDA 2019 is identical to her statement of questions involved in her brief No. 476 EDA 2019. Only the pages numbers differ.

necessary for his physical, mental, or emotional health, or morals ...;

(2) has been placed for care or adoption in violation of law;

(3) has been abandoned by his parents, guardian, or other custodian;

(4) is without a parent, guardian, or legal custodian;

(5) while subject to compulsory school attendance is habitually and without justification truant from school;

(6) has committed a specific act or acts of habitual disobedience of the reasonable and lawful commands of his parent, guardian or other custodian and who is ungovernable and found to be in need of care, treatment or supervision;

(7) has committed a delinquent act or crime, other than a summary offense, while under the age of ten years;

(8) has been formerly adjudicated dependent, and is under the jurisdiction of the court, subject to its conditions or placements and who commits an act which is defined as ungovernable in paragraph (6);

(9) has been referred pursuant to section 6323 (relating to informal adjustment), and who commits an act which is defined as ungovernable in paragraph (6); or

(10) is born to a parent whose parental rights with regard to another child have been involuntarily terminated under 23 Pa.C.S. § 2511 (relating to grounds for involuntary termination) within three years immediately preceding the date of birth of the child and conduct of the parent poses a risk to the health, safety or welfare of the child.

[42 Pa.C.S.] § 6302.

A child dependency proceeding under the Juvenile Act is instituted by the filing of a petition alleging "[t]he facts which bring the child within the jurisdiction of the court and this [Act], with a statement that it is in the best interest of the child and the public that the proceeding be brought."  42 Pa.C.S. § 6334(a)(1); *see also id.* § 6321(a)(3) . . . After hearings required by the statute, a court may find a child dependent by clear and convincing evidence.  42

- 11 -

Pa.C.S. § 6341(a), (c). If the court finds the child dependent, then it then has a broad range of options for disposition of the child's case in a way that best assures "the safety, protection and physical, mental, and moral welfare of the child," including options to place the child in the custody of persons other than the child's parents. ***See id.*** § 6351(a). However, "[i]f the court finds that the child is not a dependent child ...[,] it shall dismiss the petition and order the child discharged from any detention or other restriction theretofore ordered in the proceeding." ***Id.*** § 6341(a).

***Id.*** at 417-18 (footnote omitted). Section 6336.1(a) of the Juvenile Act specifies that a "foster parent, preadoptive parent or relative providing care for the child" is entitled to notice of any dependency hearings, as well as an opportunity to be heard. 42 Pa.C.S. § 6336.1(a). ***See In re J.F.***, 27 A.3d 1017, 1021 (Pa. Super. 2011) (preadoptive foster mother was entitled, under Section 6336.1, to notice and an opportunity to be heard).

In the current appeal, FKP first contends that the trial court erred by not holding additional proceedings on DHS's decision to remove a Child from FKP's physical custody, during which FKP should have been allowed to present evidence, to cross-examine witness, and to engage in the full range of involvement of a party with standing. FKP's Brief, No. 476 EDA 2019, at 11.

We agree and are displeased by the trial court's blatant disregard of this Court's instructions. This Court's decision unambiguously "remanded for further proceedings" – not for additional proceedings at the trial court's discretion – with the explicit purpose of allowing FKP to "participate fully in the dependency proceedings concerning DHS's decision to remove Child from her care[.]" ***T.H.***, No. 1191 EDA 2018, unpublished memorandum at 8. This Court further held that the previous proceedings were improper, because FKP

- 12 -

had been denied the presence of counsel. *Id.* at 7-8. This Court "reversed" the order of March 22, 2018, as if never existed, meaning that there was no order in existence granting judicial removal of Child from FKP's physical custody. *Id.* at 8.

Without the dependency court's sanction of this removal, Child would not have been placed with Grandmother, and, if she were not with Grandmother, the courts could not have found her no longer to be a dependent child and could not have granted Grandmother unsubsidized permanent legal custody of Child. Additionally, if legal custody of Child were not awarded to Grandmother, DHS would still have legal custody of Child, and FKP's petition for adoption naming DHS as Child's current legal custodian would be appropriate, meaning that FKP's adoption petition should not have been denied as moot. *See* FKP's Brief, No. 475 EDA 2019, at 24-25. For these reasons, we are compelled to vacate both orders dated January 15, 2019, in their entirety.

We acknowledge that the statutory mandate of the Juvenile Act vests a trial court with broad discretion to act consistently in protecting the physical, mental, and moral welfare of children notwithstanding the pendency of an appeal from previous orders and judgments. *In re R.P.*, 958 A.2d 449, 454 (Pa. Super. 2008) (citing 42 Pa.C.S. § 6351(e)(3)(ii)(A)). This Court has also held that, due to the time needed for appellate review, all hearings should continue while an appeal is pending. *Id.* at 453-54 (citing *In re H.S.W.C.-*

**_B._**, 836 A.2d 908 (Pa. 2003)). A stay normally should not be ordered, nor proceedings halted pending the appeal. **_Id._**

> A holding that deprives [the trial c]ourt of jurisdiction merely because a single Order, involving any issue or party, has been appealed would not only defy logic, but it would also frustrate the statutory authority of [the trial c]ourt to exercise continuing independent and original authority to adjudicate in the best interests of a dependent child.

**_Id._** at 453 (citations omitted).

In the current case, the dependency court hence was permitted to hold the permanency review hearings on May 15, October 16, and December 4, 2018, during the pendency of the earlier appeal at No. 1191 EDA 2018, and to enter orders determining that placement of Child continued to be necessary and that the placement goal was adoption. Nevertheless, as soon as this Court informed the dependency court of its error in conducting the hearing of March 22, 2018, and in entering of the order of that date, it should not have proceeded to a hearing on the termination of court supervision, on the discharge of the dependency petition, or on the continuation of DHS services until after it properly conducted the hearing on the removal of Child from FKP's physical custody.

Furthermore, the orders at issue must be vacated, because FKP was not provided with notice of the dependency hearing on January 15, 2019. As noted above, "[t]he court shall direct the county agency . . . to provide the child's foster parent, preadoptive parent or relative providing care for the child

with timely notice" of any hearing held pursuant to the Juvenile Act. 42 Pa.C.S. § 6336.1(a). Moreover, Pennsylvania Rule of Juvenile Court Procedure 1501 requires that notice of a dispositional hearing be sent to "the parents, child's foster parent, preadoptive parent, or relative providing care for the child[.]" Pa.R.J.C.P. 1501(5).

In the current appeal, the dependency court "conceded that FKP was a preadoptive parent prior to DHS's decision to remove Child from her care." *T.H.*, No. 1191 EDA 2018, unpublished memorandum at 7. As this Court reversed the order granting retroactive judicial removal of Child from FKP's home prior to the January 2019 dependency hearing, FKP had reverted to her pre-removal legal status as a preadoptive parent and, *ergo*, pursuant to 42 Pa.C.S. § 6336.1(a) and Pa.R.J.C.P. 1501(5), should have received notice of the January 2019 hearing, as well as been given an opportunity to be heard.

The reliance of Child's counsel on *In re J.P.*, 178 A.3d 861 (Pa. Super. 2018), to contend that the FKP was not entitled to notice of the January 2019 hearing, Child's Brief, No. 476 EDA 2019, at 8-9, is misplaced, because, in *J.P.*, unlike in the current action, there was "no factual support in the record to support [the appellant]'s claim that she was a prospective adoptive parent." *Id.* at 866-67 (citing 42 Pa.C.S. § 6336.1(a)).

When a trial court fails to ensure that notice of a dispositional hearing has been received by all individuals entitled thereto in compliance with the Juvenile Act and Rules of Juvenile Court Procedure, we have held that any

orders entered pursuant to that hearing must vacated, and the action must be remanded for the court to hold a new dispositional hearing. **See In re K.P.**, 199 A.3d 899, 904 (Pa. Super. 2018) (where trial court failed to ensure that mother received notice of adjudicatory and dispositional hearing in compliance with Juvenile Act and Rules of Juvenile Court Procedure, this Court vacated order from said hearing and remanded for new hearing). Thus, in the current case, since the dependency court failed to ensure that FKP had received notice of the dispositional hearing scheduled for January 15, 2019, in compliance with 42 Pa.C.S. § 6336.1(a) and Pa.R.J.C.P. 1501(5), we must vacate the order entered at that hearing and remand the action to the dependency court to hold a new dispositional hearing.

As we have vacated the orders dated January 15, 2019, in their entirety, we need not reach FKP's remaining issues. **See** FKP's Brief, No. 476 EDA 2019, at 13-26; FKP's Brief, No. 475 EDA 2019, at 23.

In conclusion, the dependency court must hold a new hearing on Child's removal from FKP's physical custody within 30 days of the date of this decision; at this hearing, FKP must be permitted to participate fully and to have counsel present, as this Court previously instructed the dependency court to do in **T.H.**, No. 1191 EDA 2018, unpublished memorandum at 1, 6-8. After this hearing, if the dependency court concludes that Child's removal was improper, FKP's petition to adopt Child may proceed. Only if the dependency court determines at the hearing on Child's removal that said

removal was proper, then the dependency court may proceed to the issues it considered at the hearing on January 15, 2019, including: whether termination of court supervision is proper; whether DHS services should thus be ended; whether the dependency petition should be discharged; and whether Grandmother should be granted unsubsidized permanent legal custody of Child. Also, if the dependency court finds that removal was proper, FKP's petition to adopt may again be declared moot by the adoption court. Prior to all hearings, reasonable efforts must be made to provide FKP with proper notice of the hearings. *See* 42 Pa.C.S. § 6336.1(a); Pa.R.J.C.P. 1501(5); *K.P.*, 199 A.3d at 904.

We note that, notwithstanding our vacatur of the dependency court's and the adoption court's orders dated January 15, 2019, we leave undisturbed the dependency court's earlier orders finding Child dependent and establishing Child's current placement with Grandmother; it is in the best interests of Child to maintain the *status quo* while the dependency court acts on remand. Child therefore shall not be returned to FKP's home during the period that the dependency court resolves the issues pursuant to our remand.

Orders vacated. Case remanded for further proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/29/19