J-A08029-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: B.W., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.L.A., BIOLOGICAL | : | |
| MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1527 WDA 2018 |

Appeal from the Order Entered September 27, 2018
In the Court of Common Pleas of Allegheny County Juvenile Division at
No(s):  CP-DP-0002379-2011

BEFORE:  PANELLA, P.J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED JANUARY 06, 2020**

S.L.A. ("Mother") appeals from the order finding B.W. ("Child") incompetent to give legal direction to counsel and denying a request for the appointment of separate counsel to represent Child's legal interests during dependency proceedings. We conclude that the trial court did not abuse its discretion when it found Child incompetent to give legal direction and therefore found no conflict that required the appointment of legal counsel.

In July 2015, the trial court adjudicated Child (born October 2010) dependent. In the first two and a half years that Child was dependent, B.W., Sr. ("Father")[1] made minimal progress toward completion of his permanency goals and Mother made minimal or moderate progress toward completion of her goals. By March 2018, Mother had made progress toward some of her

_____

[1] Father did not appeal the trial court's order and has not participated in this appeal.

goals, as she had obtained housing and was compliant with a methadone treatment program. The court granted Mother unsupervised visits, including overnight visits.

In September 2018, the parties and their counsel appeared for a hearing. Child's guardian *ad litem* ("GAL") informed the court that there might be a "divergence of interest" between Child's wishes and the GAL's recommendation. She requested that the court remove her from the case and appoint separate legal counsel for Child and his sister A.W. (collectively, "Children"), or leave her as the GAL but appoint separate legal counsel.[2] Counsel for Mother agreed that there was a divergence, and requested that the GAL be removed and that the court appoint a separate GAL and legal counsel for Children. The Allegheny County Office of Children, Youth and Families ("CYF") objected, arguing that Child was not competent. The trial court conducted an *in camera* interview of Child, with the parties' counsel present. Child testified, among other things, that he did not know why he was not living with Mother, did not know whether anything had changed since he had lived with Mother, and did not know whether anything was different about Mother:

> THE COURT: Just have a seat, I'm going to come down and
> talk to you.

---

[2] The GAL initially informed the court that Child's legal interest diverged from the GAL's recommended best interest and requested the appointment of separate counsel, but, on appeal, the GAL argues that the trial court did not err in declining to appoint separate counsel.

[Child], where are you staying right now, are you with your mom?

[Child]: No.

THE COURT: Where are you?

[Child]: I'm with my aunt.

THE COURT: What's your aunt's name?

[Child]: I forget her name.

THE COURT: You don't know her name, what do you call her?

[Child]: Aunt [B.]

THE COURT: Aunt [B.] So her name is [B.]

[Child]: Um-hum.

THE COURT: Okay. And what's her last name, do you know?

[Child]: Huh-uh.

THE COURT: You don't know her last name. What grade are you in?

[Child]: Second.

THE COURT: And what's your favorite subject right now? I know you've only been in school for a couple weeks though, right. What's your favorite subject?

[Child]: Math.

THE COURT: Math, all right. Are you good at it?

[Child]: Um-hum.

THE COURT: And what school do you go to?

[Child]: Spring Hill.

THE COURT: Spring Hill Elementary.

[Child]: Um-hum.

THE COURT: What do you like to do there?

[Child]: Like learn.

THE COURT: Do you like to learn, do you guys get to have gym or anything?

[Child]: Um-hum.

THE COURT: What's your favorite thing to do at [gym]?

[Child]: Exercise.

THE COURT: Exercise. And who is your best friend?

[Child]: (Inaudible), he been in like in [*sic*] my class for three years.

THE COURT: Three years, so you have known him since like kindergarten?

[Child]: Um-hum.

THE COURT: Or before kindergarten or kindergarten.

[Child]: Um-hum.

THE COURT: How often do you get to see your mom?

[Child]: I only see her on the weekends.

THE COURT: Do you go visit her or does she come visit you?

[Child]: Sometimes we go visit her, sometimes she comes to us.

THE COURT: And now you're an uncle?

[Child]: Um-hum.

THE COURT: What's the baby's name?

[Child]: [B.]

THE COURT: What do you do with [B.], anything?

[Child]: Play with her.

THE COURT: Do you play with her, all right. Does she like you?

[Child]: Um-hum.

THE COURT: How do you know?

[Child]: Because she always touches me on my face.

THE COURT: Does she touch your face? She wants to touch you, that's nice. How old is she?

[Child]: Seven months.

THE COURT: Seven months old. Wow, she is big for seven months.

So I have a question for you. Do you want to stay with your aunt or do you want to go somewhere else?

[Child]: I want to go with my mom.

THE COURT: You want to go with your mom. Do you think your mom's ready for you? Okay. Do you know why you're not with your mom now? You don't know why, okay. And have you spent any nights with your mom or anything?

[Child]: Only on the weekends.

THE COURT: On the weekend, you spend all weekend with her?

[Child]: Um-hum.

THE COURT: What's that like, what do you guys do?

[Child]: We like watch movies, have popcorn.

THE COURT: Okay. Does your mom work anywhere?

[Child]: Um-hum.

THE COURT: Where does she work?

[Child]: She works on a truck.

THE COURT: She works on a truck?

[Child]: Um-hum.

THE COURT: What does she do on the truck? Does she drive the truck or does she –

[Child]: While the boss drives the truck she makes the doughnuts.

THE COURT: She makes the doughnuts?

[Child]: Um-hum.

THE COURT: They sell doughnuts from the truck?

[Child]: Um-hum.

THE COURT: Do you get to eat doughnuts, do you like doughnuts?

[Child]: Um-hum.

THE COURT: What's your favorite doughnut?

[Child]: The black and yellow jimmies.

THE COURT: Black and yellow. I like it. Are they long ones or are they round?

[Child]: They are just round.

THE COURT: Round, okay. Do they have anything inside of them? They have chocolate on top?

[Child]: Bottom.

THE COURT: On the bottom. All right, that sounds good. I like doughnuts too.

What do you think has changed between you not living with your mom and you living with your mom, what do you think the difference is?

[Child]: I don't know.

THE COURT: What do you think the difference about her is?

[Child]: I don't know.

THE COURT: You don't know, okay. All right.

All right, [Child], I will see you in a couple weeks, okay.

[Child]: Okay.

THE COURT: All right, you can go back outside.

N.T., 9/26/18, at 7-12.

The trial court found Child not competent to direct counsel and denied the request to appoint separate counsel.

Mother filed an appeal from the court's order finding that Child was not competent to provide legal direction and denying the request for the appointment of counsel. She raises the following issue: "Can a trial court deny a child their right to unconflicted representation of their legal interest in a dependency proceeding by declaring the child lacks competence to direct his legal counsel?" Mother's Br. at 6.

The order finding Child incompetent to provide legal direction is appealable as a collateral order. **See In re J'K.M.**, 191 A.3d 907, 908 n.1 (Pa.Super. 2018) (finding order denying motion for appointment of separate GAL to represent children in dependency proceedings appealable as collateral order under Pennsylvania Rule of Appellate Procedure 313(b)).

Mother argues the trial court "conflated the issues of the unconflicted representation of a party's legal interests" with evidentiary standards for competency of a witness. Mother's Br. at 11. She argues that a conflict exists any time a Child expresses a preferred outcome that differs from the outcome recommended by the GAL. She argues that Child clearly expressed his preferred outcome was to return to Mother, and the court erred in finding he was not competent and in not appointing counsel.

We review a trial court's decision in dependency cases for an abuse of discretion. **J'K.M.**, 191 A.3d at 910 (citing **In Interest of J.P.**, 178 A.3d 861, 864 (Pa.Super. 2018)). We must "accept the findings of fact and credibility

- 7 -

determinations of the trial court if they are supported by the record." *Id.* However, we are not required to "accept the [trial] court's inferences or conclusions of law." *Id.* (citing *In Interest of J.P.*, 178 A.3d at 864).

A dependency court must appoint a GAL, who is an attorney. *J'K.M.*, 191 A.3d at 913. This GAL may "represent both a child's legal and best interests." *Id.* Under "Section 6311(b)(7), the GAL's duties in representing a child's best interests include making recommendations to the court regarding a child's placement needs." *Id.* In contrast, "under Section 6311(b)(9), the GAL is to represent a child's legal interests by determining 'to the fullest extent possible,' a child's wishes, if those wishes are ascertainable." *Id.* (quoting 42 Pa.C.S.A. § 6311(b)(9)). The child's age and mental and emotional condition should be considered when determining whether a child's wishes are ascertainable. *Id.* (citing 42 Pa.C.S.A. § 6311(b)(9)). Further, there may be a conflict of interest for the GAL where there is a divergence "between the child's wishes under 42 Pa.C.S. § 6311(b)(9), and the GAL's recommendations under 42 Pa.C.S. § 6311(b)(7)." *Id.* at 914.

In *In re J'K.M.*, this Court found that the trial court erred when it denied a mother's motion for a separate GAL for a child for dependency proceedings. 191 A.3d at 915. There, the GAL believed it would be in the child's best interest to be removed from Mother's care due to health concerns for the child. The child, who was 16 and presumed competent, testified that she wished to remain with Mother, rather than be removed, and said that she believed the system had failed her. She explained that in foster care she had been raped,

had been depressed, had stopped eating, and her grades had fallen. *Id.* at 914. Based on the child's testimony, we concluded that the child's wishes "were clearly ascertainable." *Id.* at 915.We determined that there was a "divergence of opinions between [the child's] legal interests and best interests" and this divergence created a conflict of interest, thereby requiring the appointment of a separate GAL. *Id.*

Here, unlike in *J'K.M.*, Child, who was seven years old, was unable to articulate why he preferred to return to Mother. He testified that he wished to live with Mother, but did not know why he had been removed, or what had changed since his removal. After conducting an *in camera* interview with Child, the court found that:

> [Child] [was] not sure why he was removed from the home, he doesn't know the circumstances that made him removed from the home, why he is not with his mother right now and he also doesn't know whether . . . there has been any change in mom, what [it] would [take] for him to be safe, to ascertain his ability to do anything in terms of going back home with his mother. He is not able to make a competent decision . . . as to [whether] it would be a good idea for him to go home and what the safety issues would be pertaining to that.
>
> Obviously any little boy wants to go home with his mom just about. So the court is going to find him incompetent in terms of that.

N.T., 9/26/18, at 13. The trial court concluded Child was not "competent to give legal direction to his Attorney, as he is unable to ascertain the facts at issue in these proceedings." Continuance Order, filed Sept. 26, 2018. In its opinion issued pursuant to Pennsylvania Rule of Appellate Procedure 1925(a),

the trial court further explained that Child was a "very low functioning 7-year-old, who was unable to answer basic questions about his own life circumstances." Trial Court Opinion, filed Nov. 26, 2018, at 6. The court concluded that:

> Although [Child] stated . . . that he wanted to "go home" to his mother, this court based its opinion on the examination of the witness . . . and the facts of the record; thereby reaching a conclusion that the child's age and mental/emotional condition were inadequate, as he does not know the circumstances surrounding his removal from the home and whether . . . there has been any change in his mother's behaviors which would thereby make it safe for him to return home. It is this [c]ourt's experience nearly every child wants to reunify or return to their parents despite the issues giving rise to dependency. It is clear[,] however, through his responses to the [c]ourt's questions, that he is not aware of [M]other's addiction and mental health, whether the environment provided by [M]other would be safe or *why* he is before the [c]ourt in the first place.

*Id.* at 8 (footnotes omitted; emphasis in original).

Under the particular facts of this case, we conclude that the trial court did not abuse its discretion. We are bound by the trial court's credibility determinations and factual findings, which are supported by the record. Child was unable to articulate any reason for his preferred outcome, and did not exhibit an understanding of the events that necessitated his placement. Child's statement that he wanted to live with Mother is insufficient, in the context of this case, to require us to reverse the trial court's decision not to appoint separate legal counsel. The transcript of the judge's interview with Child confirms Child did not know basic information about his circumstances or how

he came to be living with his aunt. He was unaware of the concerns for his safety that existed at the time of placement and that continued to exist. Further, the trial court observed Child during the interview, including Child's demeanor and the length of time it took Child to respond to the court's questions.

The dissent notes that Child was "unable to answer only a few of the court's inquiries." Dissent at 8. It, however, fails to note that Child repeatedly answered "um-hum" to questions, and that the trial court, not this Court, observed Child's mannerisms and facial expression while responding. Further, the unanswered questions were the most important questions, as they addressed Child's safety—what has changed since Child was removed from Mother's care and what is different about Mother since Child was removed. N.T., 9/26/18, at 12.[3] We also note that, contrary to the dissent's assertion, we are not addressing the weight to be afforded a Child's preference. Rather, we are addressing whether Child was capable of directing legal counsel.

_____

[3] The dissent also cites two cases: **Commonwealth v. Delbridge**, 855 A.2d 27, 40 (Pa. 2003), and **Commonwealth v. Ware**, 329 A.2d 258, 267 (Pa. 1974). Both cases are inapplicable. In **Delbridge**, the Pennsylvania Supreme Court concluded that whether a child witness's memory has been tainted so as to render the witness incompetent to testify was a question to be addressed at a competency hearing. 329 A.2d at 40. In **Ware**, the Court concluded that "testimonial competency requires mental capacity to perceive the event with a substantial degree of accuracy," and requires "minimum mental capacity at the time of the events testified to." 329 A.2d at 268-69. It further concluded that the trial court did not abuse its discretion in finding that three adults who were inmates of a state mental health hospital were competent to testify regarding statements made by the appellant. **Id.** at 269-272. Testimonial competency is not the issue here.

- 11 -

Because Child could not articulate any reason for his preferred outcome, and because we defer to the trial court's factual findings and credibility determinations, we conclude the court did not err in denying the request for appointment of a separate counsel. ***See In the Int. of L.Q.***, 2019 WL 3546181, at *3 (Pa.Super. filed Aug. 5, 2019) (non-precedential memorandum) (concluding trial court did not abuse discretion in denying mother's request for appointment of separate counsel of child where GAL informed court that child wanted to return to mother, but, after speaking with child, court concluded six-year-old child was unable to formulate opinion as to preferred outcome).[4] Here, Child's legal interests could not be ascertained due to his age and his mental and emotional condition and therefore no conflict could exist. ***See In re T.S.***, 192 A.3d 1080, 1090 (Pa. 2018) (finding, in proceeding involving termination of parental rights, that where child's preference is unascertainable, there is no conflict between attorney's duty to advance a subjective preference and attorney's obligation to advocate for child's best interests).

Order affirmed.

President Judge Panella joins the Memorandum.

Judge Stabile files a Dissenting Memorandum.

---

[4] We may cite unpublished non-precedential memorandum decisions of the Superior Court filed after May 1 2019, for their persuasive value. Pa.R.A.P. 126(b).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  1/6/2020